UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**Eugene Nickell**
**Eric Schilling**
**Blaine Krohn**

**On behalf of themselves and**
**all others similarly situated**

    **Plaintiffs**

    v.                                              Case No.  16-CV-202

**PGA Inc.**

    **Defendant.**

# COMPLAINT

Plaintiffs, by their attorneys, for their complaint against Defendant state as follows:

1.  This is a collective action under the Fair Labor Standards Act, and an individual and class action under Wisconsin law by Plaintiffs, current and former employees of the Defendant PGA Inc. ("PGA") to seek redress for PGA's failure to pay them overtime pay required by the FLSA and Wisconsin law; and for failing to compensate them for travel time when they travelled away from their home communities.  The Plaintiffs also bring a claim under Wisconsin prevailing wage laws for PGA's failure to pay them the correct rate of prevailing wage overtime pay, and for deducting staff agency referral fees from their prevailing wages.

## JURISDICTION AND VENUE

2.  This court has subject matter jurisdiction under 29 USC §216(b) and 28 U.S.C. §1331 because Plaintiff alleges violations of the FLSA, 29 U.S.C. §201 et seq.

1

3. This Court has supplemental jurisdiction over the Plaintiff's claims brought under Wisconsin law pursuant to 28 U.S.C. §1367 because they are based upon the same nucleus of operative facts, and therefore form the same case or controversy as their FLSA claims.

4. This Court has personal jurisdiction over the Defendant because it resides at Weston, Wisconsin, and within this district. PGA focuses its operations in, so that much of the work for which the Plaintiff did not receive the correct amount of pay from PGA occurred within this district.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) & (c) because a substantial part of the events giving rise to the claims described herein occurred in this district and Defendant may be found within this district.

## THE PARTIES

6. Plaintiff Eugene Nickell is a Resident of the State of Michigan, who worked for PGA Inc. on or after March 31, 2014. Nickell was referred to work for PGA by a staffing agency. However, throughout the course of Nickell's employment on PGA projects he was supervised by PGA supervisors, subject to PGA's right to control, and was paid directly by PGA. A copy of FLSA and Wisconsin prevailing wage law consents signed by Nickell are attached to this Complaint.

7. Plaintiffs Eric Schilling and Blake Krohn are adult residents of the State of Wisconsin, who directly worked for PGA as its employees during the time period on or after March 31, 2014. Both Schilling and Krohn reside within the Western District of Wisconsin. A copy of the FLSA and Wisconsin wage law consents signed by Schilling and Krohn are attached to this Complaint.

2

8. Defendant PGA Inc. is a Wisconsin corporation with a principal place of business located at 7306 Zinser Street in Weston, Wisconsin. PGA Inc. performs plumbing, heating, cooling, electrical, and excavating work, on both prevailing wage and non-prevailing wage projects, throughout Wisconsin. During the peak of its construction seasons PGA Inc. would use 50 or more employees, who reside both in and outside of the State of Wisconsin, to perform work on its various project sites.

9. PGA is an employer within the meaning of Wis. Stat. §109.03(1). PGA is also an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §203, by, for example, purchasing equipment, materials, and other supplies that were directly or indirectly produced outside Wisconsin, hiring employees who reside outside the State of Wisconsin, and entering into contracts directly or indirectly with non-Wisconsin suppliers and customers. At all relevant times, PGA has had annual gross volume of business at or above $500,000.

## FACTS

10. During the course of its work, PGA would perform work on both prevailing wage and non-prevailing wages projects using both employees that it directly hired, and using employees who are under its control, but are referred to it by a referral agency.

11. For each Wisconsin prevailing wage project that PGA worked on, there was a Wisconsin prevailing wage determination that set out, depending on the classification of the employee, the minimum total package hourly compensation that the employee must receive, for each of his hours worked on the project. Each prevailing wage determination for each classification also contains a hourly basic rate of pay, which represents the minimum rate that PGA must use when calculating the employees' overtime pay.

12.     Each prevailing wage determination would also show a fringe benefit rate for each classification, which equals the difference between the required hourly total package of compensation for the job and classification, and the hourly basic rate of pay for said job and classification.

13.     Wage rates for some of the Plaintiffs were governed by separate prevailing wage determinations for apprentices and/or subjourneypersons. Each such determination would also include a hourly basic rate of pay, a hourly fringe benefit rate, and a total package compensation hourly rate. For ease of reference this Complaint will refer to apprentice and subjourneyperson determinations as prevailing wage determinations.

14.     For employees that it directly hires, PGA would pay to those employees in cash the difference between the required hourly total package of compensation, and the hourly rate of actual fringe benefits received by the employee.

15.     On the other hand, for employees that it hires through a referral agency, PGA would pay to them the same wage as paid to directly hired employees, but minus a hourly referral fee that PGA is required to pay to the referral agency. PGA would claim that the referral fee as a bona fide fringe benefit in its certified payroll records. The employees would not have a separate financial obligation to the referral company if PGA failed to pay the hourly referral fee.

16.     Both for employees that it direct hires, and for employees whom it hires through a referral agency, PGA would pay to the employees cash wages at a rate that is higher than the hourly basic rate of pay shown on the prevailing wage determination.

17.     When PGA employees worked over 40 hours per week, PGA would calculate the employees' overtime pay using the hourly basic rate of pay shown on the prevailing wage

4

determination, so that the portion of the cash wage payment that exceeds the amount of the hourly basic rate of pay is excluded from the computation of overtime pay.

18. PGA has thereby paid to its employees overtime pay at a rate that is less than 1.5 times the average straight time cash wage rate earned by the employees during the workweek.

19. PGA would pay to its employees the portion of the cash wage payment that exceeds the amount of the hourly basic rate of pay without imposing any restrictions on how the employees can spend that portion of the cash wage payment; so that the employees have no obligation to use said portion of the cash wage payment to purchase bona fide fringe benefits.

20. As an employer who would hire employees both within and outside the State of Wisconsin to work on jobsites throughout the State of Wisconsin, PGA would frequently assign employees to work at jobsites that are located several hours driving one way or further from their homes.

21. When PGA employees work at jobsites located several hours or more from their homes, they frequently stayed overnight near the jobsite, rather than commute home on a nightly basis.

22. PGA may assign its employees to work 12 hours or longer on its jobsites on a single day, plus a half hour unpaid lunch. PGA may also require its employees to start working at the jobsite at 6 a.m. if not even earlier. As a practical matter, when working at jobsites located several hours or further from their homes, the Plaintiffs cannot commute home on a nightly basis without jeopardizing their ability to work safely and effectively.

23. The Plaintiffs may either drive or ride to the jobsite at the beginning of the week, or drive or ride home at the end of the week, during hours when they were working on the jobsite

during the other portions of the same workweek; so that the Plaintiffs' driving or riding time occurred during regular working hours.

24. When the Plaintiffs worked several hours or further from their homes, PGA expected the Plaintiffs to stay overnight near the jobsite during the workweek, rather than to commute home on a nightly basis. For example, the early start times required by PGA each day did not accommodate daily commutes home from a jobsite located several hours from home.

25. PGA did not pay the Plaintiffs for their driving time to and from jobsites that are located several hours or further from their homes, during workweeks when the Plaintiffs stayed overnight near the jobsite, even though it was not practical for the Plaintiffs to commute home on a nightly basis for the entire workweeks from jobsites that are located several hours or further from their homes.

26. PGA has never established, nor communicated to its employees, a special lower rate to compensate them for travel time.

## COLLECTIVE ACTION ALLEGATIONS

27. Named Plaintiffs bring their First Claim for Relief, pursuant to the Fair Labor Standards Act, on their own behalf and on behalf of all other similarly situated Plaintiffs who lost overtime pay that they are entitled to under the FLSA, as a result of PGA's uniform policy of using the hourly basic rate of pay rather than the employees' full cash wage to compute overtime pay; as well as its uniform policy of neither treating as hours worked, nor compensating the Plaintiffs for their hours of travel to jobsites located several hours or further from their homes, which are away from their home communities.

6

28. The First Claim for Relief for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA, 29 U.S.C. §216(b), for prospective members of the FLSA Class that are similarly situated to the Named Plaintiffs and have claims that are similar to their first claim for relief.

29. The claims of the Named Plaintiffs are representative of the claims of members of the FLSA Class in that such employees were hourly employees, worked for PGA, and have suffered both the under-counting of their overtime hours worked, as well as the underpayment of the correct amount of overtime pay, as a result of PGA's application of its uniform and unlawful payroll policies.

## CLASS ALLEGATIONS

30. Named Plaintiffs seek to represent a class of all current and former employees of PGA who fall within the following class description, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All employees of the Defendant who, on or after March 31, 2014, was not paid overtime pay equal to 1.5 times the average cash wage, minus overtime premiums, that they earned during the workweek; did not receive hourly pay for their hours spent traveling away from their home communities; and/or did not have their hours spent traveling away from their home communities counted as hours worked, for the purpose of calculating their entitlement to overtime pay.

31. The persons in the class identified above are so numerous that joinder of all members is impracticable. Upon information and belief, there are at least 50 members in the proposed class. Since PGA would hire employees who reside both in and outside the state of Wisconsin, the members of the proposed class are widely scattered, thus making joinder even more impractical.

32. There are questions of law and fact common to the Wisconsin Unpaid Wage Class (Rule 23 Class) that predominate over any questions solely affecting individual members of the class, including, but not limited to:

(a). Whether the portion of the straight time cash wage that exceeds the hourly basic rate of pay must be included when calculating the Plaintiffs' rate of overtime pay;

(b). Whether under Wisconsin law overtime pay must equal 1.5 times the average straight time wage rate earned by the employee during the workweek;

(c). Whether all of the time spent by the Plaintiffs, while traveling between home and a jobsite located several hours or further from their homes, constitute compensable travel time away from their home communities under Wisconsin law;

(d). Whether Wisconsin law requires PGA to pay to the Plaintiffs additional hourly compensation, for each and every one of their compensable travel time hours.

(e). The rate of pay for the Plaintiffs for their additional compensable travel time hours.

(f). The appropriate method to calculate the amount of overtime pay owed by PGA to the Plaintiffs, once their compensable travel time hours are taken into account.

33. Named Plaintiffs' claims are typical of those of the Wisconsin Unpaid Wage Class. Named Plaintiffs, like other Wisconsin Unpaid Wage Class members, were subjected to Defendants' uniform policies of never paying for their travel time between their homes and jobsites located outside their home communities; and of paying overtime pay at a rate lower than 1.5 times the average straight time cash wage received by the Plaintiffs for the workweek.

34. Named Plaintiffs will fairly and adequately protect the interests of the Wisconsin Unpaid Wage Class and has retained counsel experienced in complex wage and hour litigation.

35. Class certification of Count II of the Complaint is appropriate under Fed. R. Civ. P. 23(b)(3), because questions of law and fact common to the Wisconsin Unpaid Wage Class predominate over any questions affecting only individual members of the Wisconsin Unpaid Wage Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

36. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Defendant's common and uniform policies and practices denied the Wisconsin Unpaid Wage Class the wages for work performed to which they are entitled. The damages suffered by the individual Wisconsin Unpaid Wage Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's pay practices.

**Count I.    Overtime Pay Claim Under the Fair Labor Standards Act.**

37. Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1- 36 of the Complaint.

38. Since the exemptions from overtime pay under the FLSA do not include an exemption for hours spent working on projects covered by Wisconsin prevailing wage laws, PGA must pay overtime pay to the Plaintiffs in a manner consistent with the FLSA.

39. The FLSA requires for the Plaintiffs to receive overtime pay equal to at least 1.5 times their regular rate. None of the straight time cash payments received by the Plaintiffs can be excluded from the FLSA overtime computation given that all of the cash payments were in return for hours of active employment, the cash payments constitute legally required

9

compensation for hours worked; and that the cash payments were all directly paid to the employees rather than to a trustee or third person, and without any requirement that the cash wages must be used to provide for old-age, retirement, life, accident, health insurance, or similar benefits.

40. PGA violated the FLSA when it did not pay time and a half for the portion of the Plaintiffs' cash wage that exceeded the hourly basic rate of pay.

41. Pursuant to 29 C.F.R. §785.39:

Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly work time when it cuts across the employee's workday. The employee is simply substituting travel for other duties. The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days. Thus, if an employee regularly works from 9 a.m. to 5 p.m. from Monday through Friday the travel time during these hours is work time on Saturday and Sunday as well as on the other days. Regular meal period time is not counted. As an enforcement policy the Divisions will not consider as worktime that time spent in travel away from home outside of regular working hours as a passenger on an airplane, train, boat, bus, or automobile.

42. When the Plaintiffs travelled to jobsites that are located several hours or further from their homes, and stayed overnight near the jobsite because the distance of travel made daily commuting impractical, the Plaintiffs' travel kept them away from their home community.

43. The United States Department of Labor, which promulgated 29 C.F.R. §785.39, has interpreted the provision to mean that when the driving that occurs on a trip that keeps employees way from home overnight is outside regular working hours, the driving employee must be paid for all of his driving time, while the riding employee need not be paid for his riding time. See 1996 DOLWH Lexis 15 q. 5. Given the possible ambiguity of 29 C.F.R. §785.39, the interpretation by the DOL is entitled to deference pursuant to *Auer v. Robbins*, 519 U.S. 452,

10

461-462 (1997). The Plaintiffs are therefore entitled to have counted as hours worked all of their hours spent driving to and from jobsites located outside their home communities, regardless of whether the travel occurred during regular working hours; and to have counted as hours worked all of their hours spent riding to and from jobsites located outside their home communities, which occurred during their regular working hours.

44. Once all the plaintiffs' travel time to and from their home communities are counted as hours worked under the FLSA, each Plaintiff had additional hours worked over 40 per week, for which he did not receive all overtime pay required by the FLSA.

45. PGA violated the FLSA, when it underpaid overtime pay to the Plaintiffs, as a result of its failure to count the Plaintiffs' driving and riding time between their homes and jobsites located outside their home communities as hours worked under the FLSA.

46. Since PGA did not have any, let alone reasonable grounds for believing that the Plaintiffs' travel time to and from their home communities need not be counted as work time under the FLSA or that overtime pay can be paid at less than 1.5 times the Plaintiffs' regular rates, the plaintiffs are entitled to 100% liquidated damages for all overtime pay that PGA owed to them. The Plaintiffs are also entitled to application of the three year statute of limitations for PGA's willful violations of the FLSA.

47. The plaintiffs are additionally entitled to their reasonable attorneys fees and costs of bringing their FLSA claims against PGA.

**Count II.     Claim for Straight Time and Overtime Pay Under Wisconsin Law.**

48. Named Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1-47 of the Complaint.

49. Pursuant to DWD §274.03, PGA is required to pay to the Plaintiffs overtime pay equal to 1.5 times their regular rate of pay, for all of their hours worked over 40 hours for the week.

50. DWD §274.04, which lists all of the Wisconsin exemptions from overtime pay, does not contain an exemption for hours worked on Wisconsin prevailing wage projects. PGA is therefore required to comply with DWD §274.03, which is enforceable through Wis. Stat. §109.03(5), for hours worked by its employees on prevailing wage projects.

51. PGA has failed to pay to its employees overtime pay equal to 1.5 times their regular rate of pay by, for example but not limited to, excluding the portion of the cash straight time wage exceeding the hourly basic rate of pay from the overtime pay computation.

52. Nor can PGA justify its violation of DWD §274.03 by pointing to DWD §290.05. DWD §290.05 explicitly requires overtime pay to equal 1.5 times the straight time hourly cash payment, to the extent the straight time hourly cash payment is higher than the hourly basic rate of pay.

53. While DWD §290.05 does permit the exclusion of cash payments for bona fide fringe benefits from the overtime pay computation, under DWD §290.01(10) bona fide fringe benefits must either be paid to a trustee or other third party; or can be self-funded by the employer pursuant to a written and enforceable commitment to carry out a financially responsible plan or program.

54. PGA's direct payment of cash to its employees cannot either constitute a payment to a trustee or third party; nor as a payment towards a financially responsible plan or program to provide bona fide fringe benefits to employees. PGA's cash payments to the Plaintiffs, made for

12

the purpose of complying with the rates required by prevailing wage determinations rather than for the purpose of funding a plan or program to provide bona fide economic benefits, therefore cannot constitute cash payments for bona fide economic benefits.

55. PGA violated DWD §274.03 when it paid overtime pay to the Plaintiffs at a rate that is lower than 1.5 times the average straight-time cash wage rate received by the Plaintiffs during the workweek.

56. Pursuant to DWD §272.12(g)(6), all of the plaintiffs' travel time away from their home communities for business purposes that occur for the benefit of the employer must count as hours worked. The regulation post-dates, and copies the language of 29 C.F.R. §785.39, but omits any requirement that the travel occur during regular working hours.

57. The Plaintiffs travelled away from their home communities when they worked at jobsites located several hours or further from their homes, so that commuting home on a daily basis during the workweek would not be practical.

58. Since the Plaintiffs' travel to and from PGA jobsites was for the purpose of performing work for PGA, and since PGA cannot bid for and perform work throughout Wisconsin unless it had a workforce willing to travel to its ever changing jobsites, all such travel was for business purposes, and for PGA's benefit.

59. Since there is no explicit requirement in §272.12(g)(6) that the employees have an actual overnight stay away from home, the plaintiffs' travel time to and from jobsites constitute hours worked whenever they worked several hours or further from their homes, so that an overnight stay would be expected.

60. The Plaintiffs are therefore entitled to have counted as hours worked, all of their time spent traveling between their homes and jobsites, where the distance between their homes and jobsites made commuting home on a nightly basis through the workweek impractical.

61. In addition to additional overtime pay that would result from counting their travel hours as hours worked, to be calculated at a rate equal to 1.5 times the average straight time wage rate that they earned during the workweek, the Plaintiffs are also entitled to additional straight time hourly compensation, for each of their hours spent traveling between their home and a jobsite located away from their home communities.

62. For their travel time the Plaintiffs are entitled to straight time hourly compensation computed using their normal non-prevailing wage hourly rate of pay; given that PGA has neither established, nor communicated to its employees a lower rate to use to compensation for travel time.

63. During the time period on or after May 19, 2013, the Plaintiffs had additional hours worked over 40 per week, once their travel time away from their home communities are counted as hours worked.

64. Pursuant to Wis. Stat. §109.03(5), the Named Plaintiffs may maintain a lawsuit against PGA for additional overtime pay and travel pay. In the lawsuit they are also entitled to recover 50% increased damages authorized by Wis. Stat. §109.11(2)(b), and their reasonable attorneys fees and costs of prosecuting their claims as authorized by Wis. Stat. §109.03(6).

**Count III.    Wisconsin Prevailing Wage Claim Against Corporate Defendants**

65. Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1- 64 of the Complaint.

66. When the Plaintiffs worked more than 40 hours per week, 10 hours per day, or on a weekend on a prevailing wage project, pursuant to DWD §290.05 they were entitled to receive pay equal to 1.5 times the total cash wage that they received during the workweek for their daily or weekend overtime hours worked.

67. PGA violated DWD §290.05, when it paid to the Named Plaintiffs overtime pay, for hours worked on prevailing wage projects, calculated using a rate lower than 1.5 times the straight time cash wage rate that the Named Plaintiffs received during the workweek.

68. PGA additionally violated DWD §290.04 and DWD §290.05, when it counted the hourly referral fee that it paid to the referral agency against the prevailing wages that it was required to pay to Named Plaintiff Nickell.

69. Rather, under DWD §290.04 and §290.01(10), the only payments that can count towards the prevailing wage consist of cash payments, and payments for economic benefits made by the employer to, or presumably on behalf of the employee.

70. Payments to a third party such as a referral agency cannot constitute a payment either to, or made on behalf of the employee for the employee's benefit, and therefore cannot constitute either cash payments to the employee, or bona fide payment of fringe benefits to the employee.

71. PGA therefore cannot credit the referral fee that it paid to the referral agency against the prevailing wages that it owed to Plaintiff Nickell.

72. PGA is therefore required to pay to the Named Plaintiffs twice the amount of prevailing wages owed to them, plus their attorneys fees and costs of bringing the claim. See Wis. Stat. §66.0903(11)(a)3 and 4.

15

WHEREFORE, the Plaintiffs respectfully request the Court to enter an order that:

1. Finds that PGA is liable to the Plaintiffs for all unpaid overtime pay, 100% liquidated damages, and attorneys fees and costs arising out of the Plaintiffs' claims under the Fair Labor Standards Act;

2. Finds that PGA is liable to the Plaintiffs for all unpaid straight time and overtime wages that they are owed under Wisconsin law, plus 50% increased damages, and their attorneys fees and costs arising out of the Plaintiffs' claims under Wisconsin law;

3. Finds that PGA is liable to Plaintiffs for all prevailing wages owed, plus 100% increased damages, and their attorneys fees and costs arising out of the Wisconsin prevailing wage laws;

4. Grants to the Plaintiffs such other and further relief as the Court deems just and proper.

Dated this 31th day of March, 2016.

/s/Yingtao Ho_____
Yingtao Ho
yh@previant.com
Wis. Bar #1045418
Attorney for Plaintiffs
The Previant Law Firm S.C.
1555 North RiverCenter Drive, Suite 202
P. O. Box 12993
Milwaukee, WI 53212
Telephone: 414-271-4500
Fax: 414/271-6308