## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

Eric Schilling
Blaine Krohn

On behalf of themselves and all others similarly
situated,

|  |  |  |
|---|---|---|
| | Plaintiffs, | Case No. 16-CV-202 |
| v. | | |
| PGA, Inc., | | |
| | Defendant. | |

## DEFENDANT PGA, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR DECERTIFICATION

### INTRODUCTION

Defendant agreed to conditionally certify Plaintiffs' collective action class. However, Plaintiffs have failed to demonstrate that its group is actually similarly situated. Courts in the Seventh Circuit utilize the standards required to sustain class actions under Federal Rule of Civil Procedure 23 ("Rule 23") in assessing whether to allow collective actions to proceed under the FLSA. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) (noting that when the claims are combined, the case law has "largely merged" Rule 23 requirements with those under the FLSA). Under those principles, Plaintiffs cannot sustain their burden.

Proceeding on a class or collective basis would require the Court to conduct extensive fact-intensive inquiries into each Plaintiff's damages, as well as into PGA's potential liability and defenses. The Court and parties would be better served procedurally, and upon concerns of

fairness, by joinder and/or individual cases. Accordingly, the Court should decertify the collective class and dismiss the opt-in plaintiffs without prejudice to proceed individually.

## PROCEDURAL HISTORY

Named Plaintiffs Schilling and Krohn (also then-plaintiff Nickell) originally filed their Complaint with the court on April 1, 2016 asserting claims for overtime pay under the FLSA and for straight and overtime pay under Wisconsin prevailing wage law.  (ECF No. 1.)  Plaintiffs subsequently filed their First Amended Complaint on August 29, 2016 featuring the same named Plaintiffs but altering their claim(s) under the FLSA.  (ECF No. 13 ¶¶ 41, 43, 50).  The next day, Plaintiffs dropped Plaintiff Nickell and filed their Second Amended Complaint.  (ECF No. 16.) Finally, Plaintiffs recently filed their Motion for Leave to Amend their Complaint yet again, by adding two additional *named* plaintiffs, and at least one class claim under Wisconsin law.  (ECF No. 29.)  Plaintiffs claim that their proposed Third Amended Complaint does not affect their FLSA claims and action.  (*Id.* ¶ 8.)  However, PGA has opposed Plaintiffs' latest attempt to amend because, in their attempt, Plaintiffs have added new named Plaintiffs and new individual and class claims, which would unfairly require Defendant to incur additional costs in defending against an additional complaint.  (EFC No. 33.)

Between their Second Amended Complaint and their attempt to file their third, on November 2, 2016, the parties stipulated to conditionally certify the FLSA class.  (ECF No. 23.) As a result, consent notices were sent to all PGA hourly jobsite employees, who worked for PGA on any of its jobsites on or after March 31, 2013.  (ECF No. 23, 1.)  The deadline for individuals to opt in to the collective action was January 13, 2017.  Initially, Plaintiffs filed the opt-in forms for the two named plaintiffs in this matter (*i.e.*, Schilling and Krohn).  Then, since November, nine additional individuals have opted-in to join Plaintiffs' FLSA collective action, resulting in

11 members total.  (ECF Nos. 2, 4, 25, 27, 32, 34 (two forms), 35 (two forms), 36, 42.)[1]
Included in that count are named plaintiffs Schilling and Krohn, as well as well as Sinclair and
Krall, whom Plaintiffs have attempted to add as named plaintiffs by their Third Amended
Complaint. (ECF No. 29.) The total number of individuals who could conceivably be included as
members in the putative class is 104. (Declaration of Robert S. Driscoll, ¶ 2.)

APPLICABLE LEGAL STANDARDS

The certification process for a collective action under the FLSA is a two-step process.
*Viveros v. VPP Grp., LLC*, No. 12-CV-129-BBC, 2013 WL 3733388 at *3 (W.D. Wis. July 15,
2013).  At the first step, conditional certification, plaintiffs must make a modest showing that
they are similarly situated to potential class members and that they all were victims of a common
policy that violated the law.  *Id.*  It is undisputed that a class was conditionally certified in this
matter.  (ECF No. 23.)

The second step for certifying a class under the FLSA occurs at the close of discovery on
a motion for decertification by the defendant.  (*Id.*)  The Court applies a more stringent standard
at the second stage of the inquiry.  *Allen v. City of Chi.*, No. 10 C 3183, 2014 WL 5461856, at *2
(N.D. Ill. Oct. 22, 2014).  It is at this step that the court determines "whether the plaintiffs are
similarly situated in fact to those who have opted in."  *Viveros*, 2013 WL 3733388, at *3.  The
FLSA does not define the phrase "similarly situated."  *Russell v. Ill. Bell Tel. Co.*, 721 F. Supp.
2d 804, 811 (N.D. Ill. 2010).  The Court, however, considers:  "(1) whether the plaintiffs share
similar or disparate factual and employment settings; (2) whether the various affirmative
defenses available to the defendant would have to be individually applied to each plaintiff; and

---

[1] Excluded from this count is former named-plaintiff Nickell, as noted, Plaintiffs dropped Nickell from the suit.
(ECF No. 4.)

(3) fairness and procedural concerns."  *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004).

Finally, courts in the Seventh Circuit assess whether plaintiffs can satisfy the criteria for a class under Rule 23 and "demonstrat[e] the continued propriety of maintaining the class action." *Farmer v. DirectSat USA, LLC*, No. 08 CV 3962, 2013 WL 2457956, at *2 (N.D. Ill. June 6, 2013) (quoting *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 419 (N.D. Ill. 2003)).  There is no "good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards, though with some terminological differences."  *Espenscheid*, 705 F.3d at 772; *see also Alvarez v. City of Chi.*, 605 F.3d 445, 449 (7th Cir. 2010) (referring to commonality and predominance when considering certification of a class under the FLSA).

## ARGUMENT

## I.   The Court should decertify the collective action class because Plaintiffs' claims present too many individual variables bearing on each Plaintiff's liability and damages.

Plaintiffs have corrupted the conditionally certified collective action by raising individualized claims and defenses that will require the court to address separately each plaintiff's case with regard to damages, liability, and PGA's applicable defenses.  Therefore, plaintiffs must instead separately litigate potential violations.  Finally, procedural and fairness concerns militate against continued class certification in this matter.

### A.   Plaintiffs are not similarly situated because their increasingly individualized claims will require multiple separate fact-specific inquiries.

Plaintiffs bear the burden of showing not just that there has been a potential FLSA violation but that there is "an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws . . . ."  *Camilotes v. Resurrection Health*

*Care Corp.*, 286 F.R.D. 339, 346 (N.D. Ill. 2012) (citation omitted). Although this factual nexus does not require that the claims be identical, certification of a collective class is inappropriate where in order to determine whether each plaintiff has a viable claim "requires a detailed, fact-specific inquiry." *Id.*

The individuality of Plaintiffs' state-law prevailing wage claims complicates the FLSA claims that they bring because of the burden on the Court to conduct individualized damages assessments. In *Espenscheid* , the Seventh Circuit sustained the district court's decertification of an FLSA collective action class, along with its accompanying rejection of the plaintiffs' Rule 23 class action. Treating the two actions as a "single class," the court rejected the plaintiffs' appeal of decertification due to the number of individualized issues that their claims presented for purposes of assessing the plaintiffs' damages. *Espenscheid*, 705 F.3d at 772. The court did not distinguish for purposes of its analysis between the damage assessments arising from the plaintiffs' FLSA claims and those arising from the plaintiffs' state law claims. *See id.*[2]

Plaintiffs' Third Amended Complaint presents new challenges to the method by which PGA computed overtime for prevailing wage projects. (ECF No. 29-1 ¶ 44) ("and by computing overtime pay using the rate for the same work when performed during non-overtime hours, rather than the often higher average straight time wage rate earned by the employee during the workweek."). Although Plaintiffs claim that this does not impact the FLSA collective action (or their Rule 23 Wisconsin class for that matter), (ECF No. 29 ¶ 8), it will certainly do so for purposes of the Court's damages assessments.

By introducing this allegation into the action, Plaintiffs have introduced the need for the Court to hold separate trials on damages for all Plaintiffs, and to apply multiple standards for

---

[2] The court noted, however, that the practical limitations that plaintiffs' claims presented against class and collective certification would not have been present had the plaintiffs sought only injunctive or declaratory relief. *Id.* at 773.

how to compute overtime, depending on whether the new allegations apply to the particular Plaintiff.  Far from being able to apply generally applicable metrics to the group, to conduct this assessment, the Court will need to make highly-detailed factual inquiries before applying the otherwise generally-applicable rule, which Plaintiffs allege violates the FLSA. Those inquiries will include at least:  (1) what work each plaintiff did each week, (2) what percentage of that work each week was prevailing wage work, and (3) separate mathematical calculations for each week for each person. In other words, the calculation of cash fringe benefits will necessarily depend on a determination of the "often higher average straight time wage rate earned by the employee." (ECF No. 29-1 ¶ 44.)

These extensive factual analyses required into each Plaintiff's damages militate against continued certification and class treatment. *Aguilera v. Waukesha Mem'l Hosp., Inc.*, No. 13-C-1245, 2015 WL 3791469, at *8 (E.D. Wis. June 18, 2015).  For when:

> it appear[s] that the calculation of monetary relief will be mechanical, formulaic, a task not for a trier of fact but for a computer program, so that there is no need for notice..., the district court can award that relief without terminating the class action and leaving the class members to their own devices.

*Espenscheid*, 705 F.3d at 773 (quoting *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 372 (7th Cir.2012)).  As was the case in *Espenscheid*, "[n]othing like that is possible here." *Id*.  Indeed, it is apparent, that the time and rates for which plaintiffs are seeking compensation varied periodically and by job. (ECF No. 29-1 ¶¶ 18-23.) As such, there is no way to extrapolate the amount of uncompensated time purportedly owed to each plaintiff under the FLSA (based on cash fringe benefits) without first conducting an individualized inquiry regarding alleged damages for the "average straight time wage rate." (ECF No. 29-1 ¶ 44.) "There may also be cases where despite common questions as to liability, the remedy is so

tailored to each particular plaintiff that a collective action is inappropriate." *Alvarez v. City of Chicago*, 605 F.3d at 449 n.1.

Similarly, questions of liability are distinct per plaintiff. Although Plaintiffs' have maintained throughout that PGA violated the FLSA by incorrectly calculating overtime by not utilizing their "full cash wage," Plaintiffs have now shed light on the extent of differentiation between different Plaintiffs' work over which they claim overtime pay. PGA's policy is only one fact applicable to any particular Plaintiff; by contrast, the Court will need to assess the full spectrum of details for each individual's employment in order to assess Plaintiffs' allegations. For example, some plaintiffs, but not others, will fall into the category of individuals who allegedly performed work at a higher straight time wage rate. (ECF No. 29-1 ¶ 44.) In order to establish liability, damages and the applicability of any defenses that PGA has, the Court will need to hear individual testimony from every single plaintiff, both named and opt-in, which will turn this action into a series of mini trials.

In addition to these individualized issues per plaintiff, there are individualized defenses available to PGA, which weigh in favor of decertification. *Camilotes*, 286 F.R.D. at 352. Affirmative defenses undermine a collective action where they cannot be applied across the board to plaintiffs. *Id.* Like the situation in *Camilotes*, where the Court forecasted the unreasonable necessity to assess the defendant's knowledge with regard to the different alleged violations of the FLSA, *id.* at 352, individualized inquiries would be necessary here to determine whether PGA willfully disregarded not only the alleged violations of the FLSA with regard to each Plaintiff, but also the new alleged violations of Wisconsin's prevailing wage statute, allegedly permitting some plaintiffs to recover double damages. (ECF No. 29-1 ¶ 64.) As with Plaintiffs' claims of liability and damages, the Court's assessment and application of these

defenses will require separate mini-trials.  With the introduction of the new Wisconsin prevailing wage class claims for some but not all of the named Plaintiffs, as well as an uncertain number of individuals who "may opt into" those claims, Plaintiffs have complicated this litigation to the extent that collective action would not save the court any time.

      **B.**      **Procedural and Fairness concerns weigh heavily in favor of decertification**.

      Given the number of variables that Plaintiffs have introduced into this litigation bearing on liability and damages and the small number of individual plaintiffs, nearly half of whom Plaintiffs intend to name in the lawsuit, this is not a case where the procedural mechanism of the collective or class action is appropriate.  The Court considers the appropriateness of proceeding as a collective action based on whether use of the mechanism furthers fairness and procedural concerns.  *Franks v. MKM Oil, Inc.*, No. 10 CV 00013, 2012 WL 3903782, at *10 (N.D. Ill. Sept. 7, 2012).

      Plaintiffs have forced PGA into litigating under uncertainty due to not knowing the extent to which Plaintiffs intended to alter their class with the latest amendment. Plaintiffs' newest Complaint will unfairly prejudice PGA because Defendant's counsel has already deposed Schilling and Krohn, and so will have little to no opportunity to solicit information from them about these newest claims, which Plaintiffs infer may be attributed to members of the class, which could potentially include those already named plaintiffs. In the event that the Court permits Plaintiffs' latest amendment, PGA will need to redepose Schilling and Krohn regarding the newest allegations, as well as to depose at least Sinclair and Krall.

      Under Plaintiffs' most recent amended complaint, nearly half of the Plaintiffs who have opted in to the collective action are now named Plaintiffs.  At the same time, some of Plaintiffs' claims were only added in the most recent complaint.  Therefore, Plaintiffs show they are willing

and able to maintain an action individually or in smaller groups joining as parties, and the FLSA's statutory collective action mechanism should not be forced on PGA as a result.

## II.   The Court should decertify the collective action class because it fails to satisfy the requirements of Rule 23.[3]

As described above, courts in the Seventh Circuit assess whether a purported collective action satisfies the requirements of Rule 23 when assessing whether to decertify the conditional class at this second step in the process.  *Espenscheid*, 705 F.3d at 772; *see also Alvarez v. City of Chi.*, 605 F.3d at 449 (referring to commonality and predominance when considering certification of a class under the FLSA); *Bitner v. Wyndham Vacation Resorts*, Inc., 13-CV-451-WMC, 2016 WL 7480428, at *14 (W.D. Wis. Dec. 29, 2016) (utilizing Rule 23 principles to assess FLSA class).  Based on their sheer numbers, the number of individuals who have chosen to opt in as plaintiffs in this matter is too few to proceed collectively.  Finally, for many of the reasons identified above, named Plaintiffs fail to adequately represent the collective action class, which interferes with their typicality as required by Rule 23.

### A.   Plaintiffs' numerosity is insufficient to certify the class.

Federal Rule of Civil Procedure 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable . . . ."  Again, the total number of individuals who could potentially opt-in to this matter is 104. (Driscoll Decl. ¶ 2.)  The fact that, of that number fewer than 10 individuals who are not also named Plaintiffs chose to opt in to the FLSA class militates against certification and in favor of decertifying the collective class.  *Muecke v. A-Reliable Auto Parts & Wreckers, Inc.*, No. 01 C 2361, 2002 WL 1359411, at *2 (N.D. Ill. June 21, 2002) (decertifying a conditionally certified FLSA class and

---

[3] Defendant reserves the right to raise additional arguments in response to any Motion to Certify the Rule 23 class, which may be filed by Plaintiffs in this case.

declining to certify a Rule 23 class due to most of the purported class declining to opt-in to the litigation).

Because Plaintiffs have only 11 members in their collective action class (only seven of whom Plaintiffs have not attempted to name as parties), joinder is not impracticable.  *See In re Modafinil Antitrust Litig.*, 837 F.3d 238 (3d Cir. 2016) (noting that "the Supreme Court has stated in dicta that a class of fifteen was 'too small to meet the numerosity requirement.'" (citing *Gen. Tel. Co. of the Nw, Inc. v. EEOC*, 446 U.S. 318, 331 (1980).))  Indeed, as noted above, nearly half of Plaintiffs who have chosen to opt in to this litigation, already demonstrate their willingness to themselves be named as parties to a lawsuit.  As such, joinder or separate cases would more appropriately serve the needs of this litigation than class or collective action.

      **B.**      **Named Plaintiffs are not typical of the purported class.**

Rule 23(a)(3) requires "claims or defenses of the representative parties [to be] typical of the claims or defenses of the class . . . ."  If the class representatives' claims have "the same essential characteristics" as the class members' claims, then the requirement is satisfied.  *Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009) (citation omitted).  Although "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members," the requirement "primarily directs the District Court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large."  *Id.* (quoting *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983); overruled on other grounds by *Green v. Mansour*, 474 U.S. 64 (1985).)

Named Plaintiffs are not typical of each other and it is entirely speculative to what extent they are typical of the remainder of the purported class.  Plaintiffs' attempted Third Amended

Complaint demonstrates that Plaintiffs' proposed class is little more than several individuals who worked for PGA, whom the Court must treat as separate individuals when assessing liability and damages.  "Wage rates for Plaintiffs Krohn and Schilling, along with other potential class members, were governed by separate prevailing wage determinations for apprentices and/or subjourneypersons."  (ECF No. 29-1 ¶ 12.)  As Defendant has argued in opposing Plaintiff's attempt to file its Third Amended Complaint, the purported "individual claims" raised for the first time by this latest pleading are actually *class* claims, for which Plaintiffs attempt to attribute from Sinclair and Krall to the entire group.  (ECF No. 29-1 ¶ 58) ("Conversely, PGA sometimes paid Plaintiffs Sinclair and Krall, *along with other sheetmetal workers who may opt into* this prevailing wage claim, . . .") (emphasis added).  (*See also* ECF No. 29-1 ¶¶ 60-64.)

While PGA stipulated to the FLSA collective action class early on in the litigation, (ECF No. 23), Plaintiffs have undermined that stipulation with their latest complaint's last minute attempt to add two named plaintiffs with differing claims than the rest of the collective action class; as a result, named Plaintiffs are distinct in at least two separate groups.  (ECF No. 29.)  Given that Plaintiffs' counsel introduced these new claims only after Plaintiffs Sinclair and Krall came forward, (ECF No. 29 ¶ 1), it is highly unlikely that their claims are representative of the other named plaintiffs, who have been parties to the litigation for seven months.  Still, as noted, Plaintiffs attempt to leave the door wide open to proceeding with these brand new claims on a class-wide basis.

### CONCLUSION

For the reasons set forth above, the Court should decertify the collective action class, dismiss any plaintiffs that have opted-in to the putative class, allow named plaintiffs to continue

to proceed on the merits of their independent causes of action and award all other and further

relief to which PGA may be entitled.

Dated this 31st day of January, 2017.

Reinhart Boerner Van Deuren s.c.                 /s/ John H. Zawadsky
1000 North Water Street, Suite 1700              John H. Zawadsky
Milwaukee, WI 53202                              WI State Bar ID No. 1008654
                                                 jzawadsky@reinhartlaw.com
Mailing Address:                                 Robert S. Driscoll
P.O. Box 2965                                    WI State Bar ID No. 1071461
Milwaukee, WI 53201-2965                         rdriscoll@reinhartlaw.com
Telephone:  414-298-1000                         Katherine M. O'Malley
Facsimile:  414-298-8097                         komalley@reinhartlaw.com

                                                 Attorneys for Defendant