UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

Eric Schilling
Blaine Krohn
Erik Sinclair

On behalf of themselves and all others
similarly situated,

                Plaintiffs,

          v.

PGA, Inc.,

                Defendant.

Case No. 16-CV-202

---

**DEFENDANT PGA, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

---

### INTRODUCTION

Plaintiffs seek summary judgment on their claims under both the Fair Labor Standards Act (the "FLSA") and Wisconsin state law related to the inclusion of the cash fringe payment in PGA, Inc. ("PGA") employees' overtime calculations, on the issue of willfulness for purposes of the statute of limitations under the FLSA, on their average rate claim under Wisconsin law and on Schilling and Krohn's misclassification claim under Wisconsin law.  For the reasons stated herein and in PGA's motion for partial summary judgment, this Court should deny Plaintiffs' motion in its entirety.  PGA's exclusion of the cash fringe payment from its overtime calculation does not violate the FLSA or Wisconsin law.

Plaintiffs have failed to establish any evidence of willfulness that would entitle Plaintiffs to a three-year statute of limitations on their FLSA claim; instead, they urge this Court to ignore Seventh Circuit case law and adopt a new willfulness standard.  Because Plaintiffs' average rate claim was only raised in Plaintiffs' untimely Third Amended Complaint and PGA has not yet

answered or sought discovery on that claim, Plaintiffs' motion for summary judgment on that claim is premature and, in any case, should fail because PGA's use of the separate rates method does not violate Wisconsin law.  Finally, disputed issues of material fact preclude summary judgment on Schilling and Krohn's misclassification claims.

## ARGUMENT

**I.    PGA Did Not Violate Wisconsin Law by Not Including Payments for Cash Fringe Benefits in its Overtime Calculation.**

Plaintiffs argue, despite clear directives from Wisconsin's Department of Workforce Development ("DWD"), that PGA violated Wisconsin law by not including "cash fringes" in its overtime calculations.  According to Plaintiffs, deference is not owed to the DWD's interpretation of section 290.05 because that interpretation is unreasonable and contradicts the plain meaning of the DWD's own regulation.  (ECF No. 96 at 12-14.)[1]  Plaintiffs reach this conclusion by examining the three potential rates that an employer must use when calculating overtime on a prevailing wage project:  the "hourly basic rate of pay," the "straight time cash payment" or the "employee's normal hourly basic rate of pay."  According to plaintiffs, "normal hourly basic rate of pay" is the "employee's rate of pay for non-prevailing wage projects."  (ECF No. 96 at 13.)  Thus, "straight time cash payment" must be a rate that includes cash payments in lieu of fringe benefits.  (*Id*.)  DWD's guidance to not include such payments has thus "written the term 'straight time cash payment' out of § 290.05."  (*Id*.)

But Plaintiffs are wrong to equate "normal hourly basic rate of pay" with the employee's normal rate on non-prevailing wage projects.  It is undisputed that "hourly basic rate of pay" is a *defined* term under state prevailing wage laws, Wis. Stat. § 103.49(1)(b); Wis. Admin. Code

---

[1] PGA argued in its own motion for partial summary judgment that cash fringes are excluded from overtime under Wisconsin law and that this Court should defer to the DWD's policies confirming the same.  (ECF No. 91 at 9-13.) PGA incorporates those arguments by reference.

DWD § 290.01(9), and thus cannot refer to an employee's "rate of pay for non-prevailing wage projects" as Plaintiffs claim. Instead, both "hourly basic rate of pay" and "normal hourly basic rate of pay" refer to prevailing wage projects; the latter cannot equate to an employee's normal wage rate on non-prevailing wage projects as Plaintiffs claim.

Instead, it is the term "straight time cash payment" that refers to an employee's regular pay when not working on a prevailing wage project. If that rate is higher than what the DWD has assigned for the employee's work on a prevailing wage project, then overtime is calculated using that higher rate. This ensures that employees are not penalized for working on a prevailing-wage project if their normal rate for the employer is higher.

The DWD's publications make this abundantly clear. The "Labor Standards Information Series - Wisconsin's Prevailing Wage Rate Laws," states that, "If the worker's normal rate of pay is higher than the hourly basic rate of pay on the prevailing wage determination the worker must be paid time and one-half at their normal rate of pay." (SMF ¶ 13; ECF No. 80-1 at 9.) Similarly, DWD's "Prevailing Wage Overtime" guidance states, "Time and one-half is only calculated on the applicable hourly basic rate of pay indicated on the prevailing wage rate determination or the worker's normal rate of pay, whichever is higher." (SMF ¶ 13; ECF No. 80-2.) There is thus a distinction between prevailing wage work at the "hourly basic rate of pay" and the "worker's normal rate of pay" on non-prevailing wage jobs.

Plaintiffs' concede that the DWD advises employers to exclude payments from cash fringe benefits from the calculation of overtime. (ECF No. 96 at 13.) Because that interpretation of its own regulation is reasonable and consistent with the language of the regulation, this Court should defer to it. *See, e.g., Kuhnert v. Advanced Laser Machining, Inc.*, 2011 WI App 23, ¶ 11, 331 Wis. 2d 625, 794 N.W.2d 805 ("[A]n agency's interpretation of its own rules and regulations

is controlling unless the interpretation is plainly erroneous or inconsistent with the language of the rule.").

Despite this clear directive from the DWD, Plaintiffs claim that another regulation, Wisconsin Administrative Code DWD section 274.03, requires the inclusion of cash fringes as part of the "regular rate." Nonetheless, Plaintiffs never try to explain why this code section applies to prevailing wage work at all given that the regulations already address work on state projects. *See generally* Wis. Stat. § 103.49; Wis. Admin. Code DWD § 290.01 *et seq.* Indeed, prevailing wage workers are *not* paid a "regular rate." Instead, they receive the statutorily defined "prevailing wage rate." Wis. Admin. Code DWD § 290.04 ("An employer may discharge its obligation for payment for work done less than or equal to the prevailing hours of labor … by paying the total prevailing wage rate in cash or by paying in cash and incurring costs for bona fide economic benefits if the total of the cash payment and the total hourly contribution for the bona fide economic benefits equal or exceed the total prevailing wage rate."). *See also* Wis. Stat. § 103.49(1)(d); Wis. Admin. Code DWD § 290.01(16) (defining terms).

Thus, section 274.03 is not applicable to prevailing wage work, and the DWD itself recognizes this. In the publication Plaintiffs rely upon for the definition of "regular rate," the DWD follows up that definition immediately with a discussion of "The Wisconsin Prevailing Wage Rate Laws." (ECF No. 87-2 at 6-7) The term "regular rate" does not appear in that section, but "prevailing wage rate" does: "All workers that perform manual labor on the site of projects covered by these laws must receive the 'prevailing wage rate' for the work they perform." (*Id.* at 7.)

This result makes sense, and Plaintiffs argument would lead to an absurdity. On the one hand, DWD would be explicitly directing employers to *not* include cash fringes in the overtime

calculation, while on the other requiring that they do so under a regulation that DWD also promulgated.  If adopted, Plaintiffs' claim would turn Wisconsin's regulations into a trap for employers, even though Plaintiffs provide no evidence that DWD intended to set such a trap.

Consequently, PGA requests that this Court deny Plaintiffs' motion for summary judgment on this ground and grant PGA's cross-motion.

## II.   Plaintiffs' Have Failed to Produce Any Evidence that PGA's Conduct Was Willful; Plaintiffs' FLSA Claim is Therefore Subject to a Two-Year, Rather than a Three-Year, Statute of Limitations.

Claims under the FLSA are subject to a two-year statute of limitations.  29 U.S.C. § 255(a).  The two-year period may be enlarged to three years only if Plaintiffs satisfy their burden of showing that PGA's conduct was "willful" for purposes of the FLSA's statute of limitations.  *Id.*; *Bankston v. Illinois*, 60 F.3d 1249, 1253 (7th Cir. 1995).

The willfulness standard is difficult to meet.  "[A]n employer's mere negligence or a good faith—but incorrect—belief that they were in compliance with the FLSA, are not sufficient to rise to the level of a willful violation." *Caraballo v. City of Chi.*, 969 F. Supp. 2d 1008, 1025 (N.D. Ill. 2013) (citation omitted).  Instead, to establish willfulness for purposes of the statute of limitations, Plaintiffs must show that the employer either knew its actions violated the law or acted recklessly in determining whether its actions violated the law or not.  *E.E.O.C. v. Madison Cmty. Unit Sch. Dist. No. 12*, 818 F.2d 577, 585 (7th Cir. 1987), *see also Walton v. United Consumers Club*, 786 F.2d 303, 311 (7th Cir. 1986) (defining "willful" as "knowing and voluntary" for purposes of the FLSA.) The willfulness standard that Plaintiffs must prove for purposes of the statute of limitations is more difficult to meet than the showing of willfulness necessary for liquidated damages.  *Walton*, 786 F.2d at 312.

In this case, Plaintiffs cannot produce evidence from which a reasonable jury could reach a finding of willfulness.  Plaintiffs argue that "PGA was generally aware that under the FLSA, it

was generally required to pay overtime pay equal to 1/2 of the employees' regular rate of pay" and claim that PGA's alleged "disregard" of the FLSA is willful unless PGA made an adequate inquiry as to whether the FLSA authorizes its treatment of wages and cash fringe payments differently with respect to the computation of overtime pay, but alike in all other meaningful aspects." (Pls. Br. at 9). Plaintiffs admit that the DWD has established a rule that authorizes excluding cash fringe benefits from employee overtime pay, but nevertheless argue that PGA should have taken additional steps, including searching for DWD publications referencing overtime pay, and then searching for U.S. Department of Labor guidance. (*Id.*)

Plaintiffs' "adequate inquiry" argument is unsupported by the law, and indeed Plaintiffs cite no legal precedent to suggest what an "adequate inquiry" might be. Instead, Plaintiffs rely on *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016), in a misplaced attempt to lower the willfulness standard that Plaintiffs must meet to establish a three-year statute of limitations. *Flores* does not reflect the law in this circuit, *Flores* does not define "adequate inquiry," and the factual circumstances in *Flores* can be distinguished from this case.

In *Flores*, current and former police officers of the City of San Gabriel brought suit against the City for violations of the FLSA. The plaintiffs asserted that the City's violation of the FLSA was "willful," entitling them to a three-year statute of limitations. *Flores* is not a case in which the City made affirmative efforts to understand its legal obligations, as PGA did here, that were determined to be inadequate. Instead, the record in *Flores* demonstrated *no efforts* on the part of the City to investigate its obligations under the FLSA. *Id.* at 906. In contrast, PGA took affirmative steps to understand its obligations, but Plaintiffs argue that PGA should have done *more*.

6

*Flores* does not support Plaintiffs' argument that this Court should pick apart PGA's efforts to understand their overtime payment obligations to determine whether such efforts were "adequate," whether PGA should have done more, and what those additional steps should have been.  Indeed, Plaintiffs provide no assistance to the Court in this regard; every case cited by Plaintiffs deals with a situation in which an employer did not investigate its obligations under the FLSA in any way.  *See Montana v. JTK Restorations, LLC*, No. 14-C-487, 2015 WL 5444945, at *4 (E.D. Wis. Sept. 14, 2015) ("Ulrich … failed to investigate or consult with an attorney to determine if his arrangement complied with the law."); *Hardrick v. Airway Freight Sys., Inc.*, 63 F. Supp. 2d 898, 904 (N.D. Ill. 1999) ("Defendant, however, did not investigate whether its policy relating to overtime hours, which is the subject of the complaint herein, was legal under the provisions of the FLSA.")  These cases do not support Plaintiffs' argument that this Court should wade through each of Plaintiffs' good-faith efforts to determine their apparent adequacy.

Plaintiffs' argument disregards various affirmative, good-faith efforts by PGA to understand and comply with its legal obligations.  PGA was advised by the prevailing wage determination letters that it received from the DWD that the overtime premium need not be paid on the cash fringe payment for state prevailing wage projects.  (SMF ¶ 14.)  PGA's practice complied with this guidance, and PGA therefore had no reason to believe that its payment of the overtime premium violated the law.  PGA's Chief Financial Officer, Tom Barnetzke ("Barnetzke"), initiated multiple telephone conversations with the DWD to confirm his understanding that PGA's practices complied with applicable laws.  (*Id.* ¶¶ 15-16.)  PGA's Controller, Gail Wozniczka ("Wozniczka"), attended a prevailing wage presentation given by a lawyer that addressed state and federal prevailing wage laws and implied that the calculation of the overtime premium is the same for both state and federal prevailing wage projects.  (*Id.* ¶ 17.)

7

Wozniczka took notes during the presentation, including a notation regarding the payment of overtime on prevailing wage jobs. (*Id.* ¶ 18.) Wozniczka's notes demonstrate her understanding from the presentation that overtime pay for both federal and state prevailing wage projects is calculated using only the hourly basic rate, not the total package compensation; such an understanding was reasonable. Even if PGA's understanding was unreasonable (which it was not), case law establishes that unreasonableness alone cannot support a finding of willfulness. *Wyland v. D.C. Gov't*, 728 F. Supp. 35, 37 (D.D.C. 1990).

  *Flores* can be further distinguished from the instant case because *Flores* did not involve a situation in which the employer was following a method authorized under state law. Instead, the record in *Flores* "yields no evidence of affirmative actions taken by the City to ensure that its classification of its cash-in-lieu of benefits payments from the regular rate of pay complied with the FLSA at any time following its initial determination that the payments constituted a benefit." *Flores*, 824 F.3d at 906. PGA took numerous actions to ascertain and comply with its obligations. Unlike the case in *Flores*, PGA's conduct complied with DWD guidance regarding state prevailing wage jobs. Even if PGA's understanding regarding its compliance with the FLSA was incorrect (which it was not), any such confusion does not negate PGA's affirmative, good faith efforts to maintain compliance, whereas the City of San Gabriel made no such efforts. *Id.* at 906-907.

  Moreover, Plaintiffs urge this Court to adopt a rule inconsistent with controlling precedent in this circuit that would drastically lower Plaintiffs' burden for proving willfulness. Plaintiffs' argue that PGA's conduct is "willful" because PGA "failed to conduct any investigation to determine whether the DWD's contrary rule with respect to Wisconsin law also authorized it not to comply with the FLSA;" such argument ignores both the undisputed facts and

the controlling law in this circuit.  *See E.E.O.C.*, 818 F.2d at 585-586 ("If Madison was acting reasonably and in good faith, it could hardly be guilty of violating the law either intentionally or with reckless disregard for the legality of its conduct.")  As detailed above, PGA took reasonable, affirmative steps to inquire about its obligations under applicable law.  Plaintiffs' arbitrary designation of these efforts as "inadequate" does not undermine or negate PGA's good-faith efforts to comply with the law.

It is well established that neither mere negligence nor a good faith but incorrect belief that an employer's practices complied with the FLSA rise to the level of a willful violation.  *See Caraballo*, 969 F. Supp. 2d at 1025.  In the Seventh Circuit, Plaintiffs must show that the employer either knew its actions violated the law or acted recklessly in determining whether or not its actions violated the law.  *E.E.O.C.*, 818 F.2d at 585.  Plaintiffs would have this Court ignore these rules and hold that a good faith, but incorrect, belief generated from an employer's investigation is sufficient to rise to the level of a willful violation if such investigation is not "adequate." (Pls. Br. at 10.)  Such a rule is not only inconsistent with prior case law in this circuit, but would present courts with the unwieldly task of determining how much inquiry is an "adequate" inquiry.  Such an approach is at odds with controlling case law and must not be adopted by this Court.

PGA did not act willfully or with reckless disregard of its obligations; at most, the facts in this case demonstrate confusion or misunderstanding of the differences between PGA's obligations under state prevailing wage law and the FLSA, which is insufficient to satisfy Plaintiffs' burden of proof.  *Caraballo*, 969 F. Supp. 2d at 1025.  Plaintiffs cannot provide evidence that any alleged failure by PGA to seek out additional FLSA-specific guidance is

anything more than mere negligence, especially because PGA took affirmative steps to understand its obligations on prevailing wage jobs.[2]

Even if each of the facts alleged by Plaintiffs is taken as true, Plaintiffs have not demonstrated that PGA had knowledge of its purported obligations under the FLSA and disregarded them.  Because Plaintiffs have not, and cannot, meet their burden of demonstrating that PGA knew of, and acted in willful or reckless disregard for, its purported obligations, this Court must hold that the two-year statute of limitations is applicable to Plaintiffs' claims.

## III. PGA's Calculation of Overtime of Prevailing Wage Projects Does Not Violate the FLSA.

Plaintiffs are not entitled to summary judgment on their FLSA claim.  Plaintiffs argue that PGA violated the FLSA by improperly calculating Plaintiffs' "regular rate" under the FLSA. (Pls. Br. at 7.)  According to Plaintiffs, PGA should have included in the FLSA overtime calculation the cash fringe benefit payment that it paid to Plaintiffs for each hour of work pursuant to the prevailing wage laws in Wisconsin. (*Id.*)

PGA acted pursuant to advice provided to it directly from the DWD, which stated that the regular rate did not include cash payments made in lieu of fringe benefits.  The DWD provided PGA with prevailing wage determination letters that advised PGA how to calculate overtime, confirming the overtime premium need not be paid on cash fringe benefits on state prevailing wage projects. (SMF ¶ 14.)  Barnetzke initiated multiple telephone calls with the DWD to confirm his understanding that PGA's pay practices complied with applicable laws.  (*Id.*  ¶¶ 15-

---

[2] In fact, Plaintiffs' counsel has stated in a State Bar of Wisconsin blog post that "Many employers across the State have followed the DWD's recommended method for calculating overtime pay on prevailing wage projects."  Yingtao Ho, *Cash Fringes, Overtime Pay, and the Fair Labor Standards Act*, STATE BAR OF WISCONSIN LABOR & EMPLOYMENT LAW BLOG (Dec. 30, 2015), http://www.wisbar.org/blog/Pages/LaborBlog.aspx?ArticleID=24531 (Driscoll Decl. ¶ 3.)  In other words, PGA's practice of excluding the cash fringe payment from the overtime calculation is not unique to PGA and does not evidence willfulness by PGA that would entitle Plaintiffs to a three-year statute of limitations.

16.)  In addition to Barnetzke's conversations with the DWD, Wozniczka attended a presentation by a lawyer that addressed state and <u>federal</u> prevailing wage laws.  (*Id.* ¶ 17.) The presentation separately addressed <u>federal</u> and state determinations on slides 4 and 5, but included only one slide regarding overtime pay, which indicated to PGA that the laws are consistent with one another with respect to the overtime calculation.  (*Id.* ¶ 19.)

Indeed, the regulations recognize that cash payment on federal prevailing wage projects that are made in lieu of fringe benefits are not included in the "regular rate" under the FLSA. 29 C.F.R. §§ 5.32, 778.6.  Given this exclusion, it would not be reasonable to require state prevailing wage project to calculate overtime using cash payments for fringe benefits as part of the regular rate under the FLSA.

## IV.    Plaintiffs are Not Entitled to Summary Judgment on their Average Rate Claim Under Wisconsin Law.

Plaintiffs' motion for summary judgment on Plaintiffs' Average Rate Claim fails for a number of reasons.  Since the Average Rate Claim was included only in Plaintiffs' untimely Third Amended Complaint, this court need not consider Plaintiffs' arguments on that claim because the Third Amended Complaint was filed without leave to amend and should be stricken or dismissed.  Even if this Court allows the Third Amended Complaint, summary judgment on the Average Rate Claim is premature because PGA has not yet had the opportunity to answer or conduct discovery related to that claim.  If, however, this court considers Plaintiffs' motion, Plaintiffs are not entitled to summary judgment because the DWD permits employers to utilize a separate rates method for calculating overtime, issues of material fact exist regarding Plaintiffs' identified examples of instances when the separate rates method was allegedly used, and because Plaintiffs overstate the extent to which Wisconsin case law supports their argument that using the average rate method is the only way to comply with Wisconsin's overtime laws.

**A.      This Court Need Not Consider Whether Plaintiffs Are Entitled to Summary Judgment on the Average Rate Claim Because Such Claim was Added by Plaintiffs' Untimely Third Amended Complaint.**

As an initial matter, this Court need not consider whether Plaintiffs are entitled to summary judgment on their claim that PGA unlawfully paid Plaintiffs overtime pay computed at 1.5 times their rate of pay for the type of work performed during overtime hours rather than at 1.5 times their average straight time wage rate earned during the work week (the "Average Rate Claim").  This claim appears only in Plaintiffs untimely Third Amended Complaint, which PGA has asked this Court to strike. As discussed in PGA's Motion to Strike Third Amended Complaint or, In the Alternative, to Dismiss Third Amended Complaint, this Court granted Plaintiffs leave to file a Third Amended Complaint by February 23, 2017.  (ECF No. 70.) Plaintiffs did not file their Third Amended Complaint until March 10, 2017—15 days after Plaintiffs' deadline had passed (ECF No. 68.)  Because Plaintiffs failed to file by the Court ordered deadline, the Third Amended Complaint was filed without leave to amend and should therefore be stricken in its entirety pursuant to Fed. R. Civ. P. 16(f), or the claims therein should be dismissed pursuant to Fed. R. Civ. P. 41(b).

**B.      Even if This Court Permits Plaintiffs to Pursue an Average Rate Claim, PGA's Overtime Calculation Using a "Separate Rates" Method Does Not Violate Wisconsin Law.**

Even if this Court permits Plaintiffs to pursue the untimely filed Third Amended Complaint alleging the Average Rate Claim, Plaintiffs' motion for summary judgment on that claim should be denied. Wisconsin law contains no "presumption" that an employee's regular rate must always result from utilizing an employee's average rate of pay. (ECF No. 96 at 16.) This is—to Plaintiffs—a useful device on which to draw a distinction between Wisconsin law and the FLSA; however, it is baseless. Contrary to Plaintiffs' argument, this Court has not already decided that one's "regular rate" must necessarily be calculated using the average

rate method. (ECF No. 96 at 15); *see also infra* (discussing why *Wicke* and *Kuhnert* are not determinative). Indeed, the DWD recognizes that employers may use the separate method to calculate overtime pay.

1.    **The DWD Recognizes That Employers May Utilize the Separate Rates Method in Calculating Overtime Due to Their Employees.**

The DWD readily accepts the use of the separate rates method for calculating overtime. (Additional SMF ¶ 2-3); *see also* 1 Peter L. Albrecht et al., Wisconsin Employment Law § 5.41 (6th ed. 2016) (Chapter 5 authored by James J. Chiolino)[3] ("[T]he DWD will accept either of the two methods acceptable under the FLSA…. As a practical matter, the employer should determine which method is more financially beneficial to the employer as to a particular employee or group of employees and adopt that method."). Although Plaintiffs are correct in their assertion that, under the FLSA, Wisconsin is "free to require its employers" to use the average regular rate, (ECF No. 96 at 16), Plaintiffs have failed to show that it does so.

The DWD's guidance confirms that PGA's decision in some cases to utilize the separate rates (or "rate in effect") method for calculating its employees' overtime is consistent with the DWD's approach. (Additional SMF ¶ 4); *see also* 1 Albrecht, supra, § 5.41. On April 20, 2017, Barnetzke exchanged e-mail correspondence with David Newman from the DWD regarding the appropriate method for calculating overtime for employees who worked in multiple trade classifications in a single week. (Additional SMF ¶ 1.) In response to Barnetzke's inquiry, Mr. Newman, confirmed that the overtime premium for employees who worked in more than one trade classification during the work week may either be calculated using the blended rate, or may

---

[3] Jim Chiolino serves as the current Director of the Labor Standards Bureau and the Deputy Division Administrator of the Equal Rights Division of the Wisconsin Department of Workforce Development. *See* http://dwd.wisconsin.gov/er/contacts.htm (last visited June 12, 2017). Director Chiolino has spoken on behalf of the Labor Standards Bureau on policy matters and on the Bureau's interpretations of Wisconsin wage and hour law. *See* 1 Albrecht, supra, § 5.107 (Letter from Jim Chiolino, Section Chief, Labor Standards Bureau, to Daniel T. Dennehy, Attorney, von Briesen & Roper, S.C. (Oct. 19, 2004)).

be calculated using the separate rates method, (*Id*. ¶¶ 2-3), consistent with guidance from the Labor Standards Bureau Director. *See* 1 Albrecht, supra, § 5.41.  The DWD's advice complies with applicable law, and PGA's compliance with such advice was reasonable.

> **2.**     **Plaintiffs' Purported "Examples" of Instances In Which the Separate Rates Method Was Used Are Not Reliable and Present Disputed Issues of Fact.**

Plaintiffs claim to have "identified numerous examples" of instances in which PGA used the separate rates method, instead of the average rate method, was used to calculate PGA employees' overtime.  Plaintiffs' reliance on ECF No. 47-7 as support for this assertion is inappropriate and presents disputed issues of material fact that preclude summary judgment.

PGA has disputed Plaintiffs' proposed finding of fact as an inappropriate legal conclusion, not a material fact.  (PGA Resp. to Pls. PFOF 24.)  As support for PFOF No. 24, Plaintiffs cite to a document that was created by Plaintiffs' counsel to argue Plaintiffs' position from underlying documents.  (ECF Nos. 47; 47-7.)  ECF No. 47-7 is confusing and was not a document maintained by PGA, and therefore Plaintiffs' proposed finding of fact based on ECF No. 47-7, and Plaintiffs' argument based on this fact, should be stricken in its entirety.

Moreover, at least one of the examples in ECF No. 47-7, the line for "DE," is not correct. Indeed, it appears that Plaintiffs made mathematical errors that have caused the numbers in the "Total Straight Pay," "Hourly Rate," and the "Correct Non P OT Rate" columns to be incorrect in that example.  (Barnetzke Decl. ¶¶ 8-9.)  When correctly calculated, the "Total Straight Pay" number for "DE" should be $1591.88 (not $1975.40), the "Hourly Rate" number should be $31.06 (not $38.54), and the "Correct Non P OT Rate" number should be $46.59 (not $57.82). (*Id.*)  Plaintiffs' assumption in ECF No. 47-7 that PGA was required to use the average rate method for each of these employees is also incorrect. (Barnetzke Decl. ¶¶ 10-12.)  ECF No. 47-7

does not show *when* the overtime hours were worked; instead, it just lists a total amount of overtime hours. (*Id.* ¶ 10.) Similarly, the underlying certified payroll records (ECF No. 47-6) do not show on which day non-project overtime hours were worked; without seeing the underlying time sheets, it is impossible to say with certainty when non-project overtime hours were worked and it cannot be assumed that the employee's overtime rate should have been blended. (Barnetzke Decl. ¶ 10.)

There may be instances in ECF No. 47-7 in which the employee worked only one trade during the first forty hours of the week on a prevailing wage job, and then worked on a non-prevailing wage job during the overtime hours at the end of the week. (*Id.* ¶ 11.) Such a case would be an example of when PGA would use the separate rates method to calculate overtime pursuant to an advance agreement between PGA and the employee because the employee's overtime premium would not be subject to blending. (*Id.*) For example, the certified payroll records for "DE" indicate that he may be an example of such a situation in which "DE" worked four, 10-hour days at a single wage classification on the UWSP - Debot Hall project at the beginning of the week, and then worked his 11.25 overtime hours on Friday on a non-prevailing wage project at his normal, non-prevailing wage rate. (*Id.* ¶ 12.) In that situation, DE's overtime pay would not be blended. (*Id.*) However, it is impossible to know whether this assumption about DE's overtime hours is correct without analyzing his timesheets. (*Id.*)

It is not the responsibility of this Court, or of PGA, to search the record for evidence not cited by Plaintiffs to determine the accuracy of Plaintiffs' legal conclusions and assumptions at the summary judgment stage—such an expectation would be ridiculous. *See Stott v. I.R.S.*, No. 14-CV-176-BBC, 2014 WL 7338789, at *1 (W.D. Wis. Dec. 22, 2014) (quoting this Court's "Procedure on Motions for Summary Judgment" procedural document, stating that "'[t]he court

15

will not consider facts contained only in a brief' or 'search the record for evidence.'"); *Gamblin v. Groves*, 155 F. App'x 921, 923 (7th Cir. 2005) ("[D]istrict courts are not required to search the record for evidence sufficient to defeat a motion for summary judgment.")

> **3.** **The Court Should Prohibit Plaintiffs' Average Rate Claim Because the State Itself Would Be Equitably Estopped From Pursing Any Such Alleged Violations.**

Due to DWD's representations that employers have (and PGA in particular has) the option to utilize the separate rates method to compute overtime, the State of Wisconsin would itself be equitably estopped from challenging PGA's use of the separate rates method to calculate overtime since the agency that was tasked with enforcing Wisconsin's overtime laws identified to PGA that doing so was permissible.  Equitable estoppel is "available as a defense against the government if the government's conduct would work a serious injustice and if the public's interest would not be unduly harmed by the imposition of estoppel."  *Beane v. City of Sturgeon Bay*, 112 Wis. 2d 609, 620–21, 334 N.W.2d 235 (1983) (quoting *Wis. Dep't of Revenue v. Moebius Printing Co.,* 89 Wis. 2d 610, 638, 279 N.W.2d 213 (1979)); *see also State v. Drown*, 2011 WI App 53, ¶ 7, 332 Wis. 2d 765, 797 N.W.2d 919, 2011 WL 1124348 (quoting *Wis. Dep't of Rev.*, 89 Wis. 2d at 634 (noting that the defense is available "even when it acts in its governmental capacity.")

Plaintiffs assert, without citation, that "[t]here is no reason why the term 'regular' rate should be interpreted differently under Wisconsin law when compared to the FLSA."  (ECF No. 96 at 12.)  From that unsupported assertion, Plaintiffs derive their argument that Wisconsin employers *must* use the average rate method. However, the agency tasked with enforcing Wisconsin's law to that effect says otherwise.  Were this question before the DWD, Plaintiffs' arguments exploiting the lack of the option to utilize the separate rates method to calculate

overtime would be disregarded. The Court should similarly disregard Plaintiffs' Average Rate Claim.

> **4.    Plaintiffs overstate the extent to which Wisconsin case law supports their argument that using the average rate method is the only way to comply with Wisconsin's overtime laws.**

In Plaintiffs' view, this Court has already decided that the average wage rate earned by the employee must exclusively be used under Wisconsin law in computing overtime "as a matter of law." (ECF No. 96 at 15.)  However, the cases on which Plaintiffs rely provide only for deference to agency actions in particular sets of circumstances.  For example, in *Wicke v. L&C Insulation, Inc.*, No. 12-CV-638-WMC, 2014 WL 2957434, at *11 (W.D. Wis. July 1, 2014), this Court determined that plaintiffs' motion for summary judgment on that issue should be granted because the defendant had not explained how its policy had satisfied Wisconsin law overtime requirements.  In contrast here, PGA has done exactly that; any use by PGA of the separate rates method to compute overtime was permitted by the DWD.

Similarly, *Kuhnert v. Advanced Laser Machining, Inc.*, 2011 WI App 23, ¶ 12, 331 Wis. 2d 625, 633, a copy of which the DWD provided to PGA in explaining the option to use either the average rate or separate rates method to calculate overtime, (Additional SMF ¶ 3), stands for deference to agency interpretation and implementation of Wisconsin's wage and hour laws, which DWD is responsible for enforcing.  *Id.*  Just like in that case, where the Court of Appeals deferred to the DWD policy because it provided "a uniform standard for use by all employers," (*Id.* ¶ 13), the option of choosing either the average rate or separate rates method is standard and available to all employers whose employees work at multiple job rates. (Additional SMF ¶¶ 3-4); *see also* 1 Albrecht, supra, § 5.41.

Finally, Plaintiffs also overstate the "support" that *Hormel* and *Weissman* give to their position.  Both were donning and doffing cases and provided for nothing outside of that context from which Plaintiffs can draw a broader conclusion about Wisconsin overtime law.  Although the Wisconsin Supreme Court acknowledged that Wisconsin law contains no analogous provision to 29 U.S.C. § 203(o) (allowing parties to a CBA to bargain with regard to the compensability of time spent changing clothes), the parties' collective bargaining agreement in *Hormel* did not address the compensability of time spent changing clothes, so the exemption in section 203(o) would not have been at issue under the FLSA in any event. *See United Food & Commercial Workers Union, Local 1473 v. Hormel Foods Corp.*, 2016 WI 13, ¶¶ 76-77, 367 Wis. 2d 131, 876 N.W.2d 99.  As such, the court's recognition of that difference between the FLSA and state law is neither precedential nor helpful to Plaintiffs' case here.

Moreover, Section 203(o) of FLSA creates the circumstances for an *exception* to the general rule of compensable time to arise in the context of time spent changing clothes.  By contrast, Section 207(g) of the FLSA provides only further *clarification* for how overtime may be properly calculated, and as such, DWD properly advises employers that they may utilize it consistent with the FLSA. Contrary to Plaintiffs' argument, Wisconsin courts have readily applied *clarifications* to the FLSA in interpreting Wisconsin law. *See Kieninger v. Crown Equip. Corp.*, No. 2014CV002791, (Wis. Cir. Ct. Dane Cty. Feb. 15, 2017) (Driscoll Decl. ¶ 4, Ex. B.).

Similarly, in *Weissman*, the court indicated that – in that case—Tyson Foods had failed to show why the court should apply federal law.  *See Weissman v. Tyson Prepared Foods, Inc.*, 2013 WI App 109, ¶ 49, 350 Wis. 2d 380, 838 N.W.2d 502 ("Tyson fails to explain why we should  conclude that the donning and doffing at issue here constitute 'changing clothes ... under normal conditions.'" (citation omitted))  Here, PGA has made exactly that showing; the Court

should permit the separate rates method under Wisconsin law because the Wisconsin agency that enforces the law permits its use.

Because PGA is permitted to calculate overtime using the separate rates method under the FLSA and as advised under Wisconsin law by the DWD, PGA's overtime pay practices do not violate Wisconsin law.  Therefore, Plaintiffs' motion for summary judgment on the Average Rate Claim must be denied.

**V.    Disputed Issues of Material Fact Preclude Summary Judgment on Schilling and Krohn's Misclassification Claims.**

Plaintiffs' argument that Schilling and Krohn were misclassified as subjourneymen under state law is a fact-intensive inquiry that is inappropriate for summary judgment.  Disputed issues of material fact exist regarding Schilling and Krohn's misclassification claim that cannot be resolved at the summary judgment stage.  *Wood v. Allstate Ins.*, 21 F.3d 741, 746 (7th Cir. 1994) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

Plaintiffs argue that Schilling and Krohn were entitled to the General Laborer rate of pay for the first seven weeks of the UWSP - Debot Hall project, during which they claim to have "spent the majority of their time drilling holes through concrete floors, or performing other work supporting their own concrete cutting work …." (Pls. Br. at 19.)  Plaintiffs claim that, during the first seven weeks, Schilling "spent at least 90% of his time either drilling holes through the floor, walls or in the basement, or performing preparatory and concluding work supporting his own drilling work, with the exception of two days when he did sweeping work."  (*Id.* at 20.) Plaintiffs similarly allege that, during the "seven or more weeks" when Krohn performed hole drilling work, "he spent at least 95% of his work time drilling holes through the floor, walls or in the basement, or performing preparatory and concluding work supporting his own drilling work." (*Id.* at 21.)

Schilling and Krohn's assertions that they are able to remember specific tasks that they performed each day, over a twelve-week period, over two years ago, in sufficient detail to ascribe a specific percentage of time spent on that work is incredible, especially in light of their deposition testimony that they did not write down or otherwise record any tasks that they performed.  Schilling and Krohn both state in their declarations in support of their motion for summary judgment that, "Because throughout most of the project I suspected that I was being underpaid for my hole drilling work, I paid attention to, and made a point to try to remember the types and amount of work that I was performing, in case I may want to later bring a claim for the underpayment of wages."  (ECF No. 88 ¶ 17; ECF No. 89 ¶ 17.)  However, Schilling and Krohn's deposition testimony undermines their assertions that they "made a point to try to remember" what work they performed each day.  During his deposition, Krohn testified:

> Q:    I just have one follow-up question.  Did you keep track of what you did when you were working for PGA? Spent today coring; today, general labor?
>
> A:    I did not write down anything, but I -- everything, I guess, that I remember is in my mind so…

(ECF No. 52 at 73:10-15.)

Likewise, when asked whether he kept track of his hours or wrote down how many hours he worked, Schilling responded, "It was mostly just in my head."  (ECF No. 51 at 71:22 - 73:1.)

Schilling and Krohn's declarations that they "made a point to try to remember" the work they performed on a day-to-day basis undermines their deposition testimony, which indicates that they made no efforts to record or memorialize what types of work they performed each day. Plaintiffs must not be permitted to rely on self-serving declarations that purport to alleviate issues of material fact when such declarations contradict their deposition testimony.  *See Cook v. O'Neill*, 803 F.3d 296, 298 (7th Cir. 2015) ("A 'sham affidavit' is an affidavit that is inadmissible

because it contradicts the affiant's previous testimony ... unless the earlier testimony was ambiguous, confusing, or the result of a memory lapse.")

In their depositions, Schilling and Krohn indicate that they made no affirmative effort whatsoever to keep track of the tasks they performed—neither by writing notes, notifying anyone at PGA, nor any other method—other than apparently keeping the knowledge "in their head." Now, Schilling and Krohn make unsubstantiated claims that they somehow "made a point" to remember the information, without detailing how they purported to do so.   Moreover, Schilling and Krohn now purport to remember detailed percentages of time—90% and 95% of their working time, respectively—that they allegedly spent performing specific tasks.  Because Schilling and Krohn can offer no explanation for the apparent clarity of their memories regarding the percentages of time spent performing tasks more than two years ago, the reliability and credibility of their testimony regarding the tasks they performed on a day-to-day basis are issues for the factfinder, not for this Court at the summary judgment stage.  *Wood*, 21 F.3d at 746 ("[I]t is fundamental that where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate.")  Any ambiguities between Schilling and Krohn's declarations and deposition testimony should be construed in favor of PGA as the non-movant.  *Sluga v. Metamora Tel. Co.*, No. 13-1553, 2015 WL 1811823, at *3 (C.D. Ill. Apr. 17, 2015) (citing *Aviles v. Cornell Forge Co.*, 183 F.3d 598, 602–03 (7th Cir. 1999)).

Moreover, Schilling and Krohn's testimony conflicts with that of PGA's corporate representative.  When asked what tasks were performed on the project on a day-to-day basis, Schilling and Krohn's supervisor told PGA's corporate representative that "there's no way he could remember from day to day at this point what anybody did a year and a half ago on a day-

21

to-day basis, nor could Mr. Krohn or Mr. Schilling" because that level of detail is not reflected in PGA's time records.  (ECF No. 77 at 106:22 - 107:18.)  Whether this Court should accept specific percentages from Schilling and Krohn over the contradictory testimony from PGA, without any documentation to back up their claims, again turns on an issue of credibility for the factfinder.  "[S]ummary judgment cannot be used to resolve swearing contests between litigants," and a "court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder."  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

A second issue of disputed material fact exists as to whether Schilling performed any wall or basement drilling work during his employment with PGA.  In their brief, Plaintiffs assert that "In addition to drilling holes through Concrete floors, the Plaintiffs also drilled holes through walls …."  (Pls. Br. ¶ 20.)  Plaintiffs further assert that "Both Schilling and Krohn also drilled holes through concrete in the basements …." (*Id.*)  However, Schilling's deposition testimony does not reflect any drilling work other than the floor drilling that he performed during the first seven weeks of his employment with PGA.  Indeed, when asked by PGA's counsel, "What did you do when you were on the job?" Schilling never mentioned performing any wall-drilling or basement-drilling work.  (ECF No. 51 at 73:8 - 90:8.)

As discussed above, PGA's corporate representative testified that there is no way to ascertain what types of work Schilling performed for PGA, since he never reported those tasks and PGA's records do not reflect that level of detail.  (ECF No. 77 at 106:22 - 107:18.)  Thus, whether Schilling's new testimony regarding his wall and basement drilling work is credible is an issue for the factfinder that cannot be resolved on summary judgment.  *Payne*, 337 F.3d at 770.

## CONCLUSION

Plaintiffs are not entitled to summary judgment on any of their claims.  Consequently, this Court should deny Plaintiffs' motion for summary judgment and grant PGA's motion for partial summary judgment.

Dated this 12th day of June, 2017.


Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202

Mailing Address:
P.O. Box 2965
Milwaukee, WI 53201-2965
Telephone:  414-298-1000
Facsimile:  414-298-8097

/s/ Katherine M. O'Malley
John H. Zawadsky
WI State Bar ID No. 1008654
jzawadsky@reinhartlaw.com
Robert S. Driscoll
WI State Bar ID No. 1071461
rdriscoll@reinhartlaw.com
Katherine M. O'Malley
WI State Bar ID No. 1086597
komalley@reinhartlaw.com
Attorneys for Defendant PGA, Inc.

36360836