IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ERIC SCHILLING, BLAINE KROHN,
and ERIK SINCLAIR,

        Plaintiffs,                        OPINION AND ORDER

v.

                                                     16-cv-202-wmc

PGA INC.,

        Defendant.

---

Plaintiffs Eric Schilling, Blaine Krohn and Erik Sinclair assert claims against their employer, PGA Inc., a company specializing in air comfort systems in central Wisconsin, for allegedly calculating overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Wisconsin state labor laws. Specifically, plaintiffs allege that: (1) PGA's policy of not including the "cash fringe rate" in calculating overtime violates both the FLSA and state law; and (2) PGA's policy of paying overtime based on the rate for the work performed during overtime hours, rather than on a "straight-time hourly rate," violates state law.[1]

The *first* theory is based on PGA's alleged miscalculation of overtime pay for prevailing wage work. Plaintiff contends that PGA violated state law and the FLSA by failing to pay its employees overtime based on the hourly basic rate *plus* the cash fringe

---

[1] At this time, the court opts to exercise its supplemental jurisdiction over the state law claims. While plaintiff pursues both federal and state law claims based on the cash fringe rate theory, the straight-time hourly rate claim only arises under state law. As such, if the court were to grant judgment in defendant's favor on the cash fringe rate theory, it would likely decline to continue to exercise its supplemental jurisdiction over the straight-time hourly rate claim, consistent with the Seventh Circuit's direction. *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("The usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

rate. Instead, plaintiffs claim, PGA calculated overtime for prevailing wage work using only the hourly base rate, and then adding the cash fringe rate to that overtime hourly rate.[2] The *second* theory is based on plaintiffs' PGA's allegedly miscalculating overtime using the rate of pay for the work completed during overtime hours, rather than the average straight time hourly rate earned during the workweek.

Consistent with its usual two-step procedure, this court previously certified a conditional FLSA collective action based on the "cash fringe rate" claim. (11/2/2016 Order (dkt. #24).) Before the court is plaintiffs' motion to certify a Rule 23 class covering both state law claims or two subclasses (dkt. #45), as well as defendant's motion to decertify the FLSA collective action (dkt. #53). For the reasons that follow, the court will grant plaintiffs' motion for class certification, certifying a single Rule 23 class covering both overtime claims. For the same reasons, the court will deny defendant's motion to decertify the FLSA collective action.

---

[2] The FLSA collective action notice offers the following helpful example of how they allege PGA miscalculated overtime pay for prevailing wage work:

> When you worked on prevailing wage projects, the wages you received included both cash and cash fringe payments. For example, if you received $40 per hour in wages, $10 out of the $40 may be a cash fringe payment, while $30 out of the $40 was a wage payment. PGA paid you overtime pay equal to 1.5 times the wage payment plus the cash fringe. In this example PGA paid you 1.5 times the $30, plus the cash fringe of $10, for a total of $55 per hour.
>
> Plaintiffs contend that you are entitled to 1.5 times the full $40 in wages, for a total of $60; and that PGA violated the FLSA by paying you $55 rather than $60 for your overtime hours worked. Plaintiffs claim that you are entitled to two times the overtime pay you should have, but did not receive as damages.

(Def.'s Proposed Notice (dkt. #23-1) 2.)

Finally, before the court are the parties' cross-motions for summary judgment. (Dkt. ##85, 90.) In light of the parties' reliance on competing Wisconsin administrative code provisions and other administrative documents, and the limited case law as to plaintiffs' specific legal claims, the court believes that oral argument would be worthwhile. Accordingly, the court will hold oral argument at 10:00 a.m. on April 26, 2018.[3] Depending on the oral argument and the outcome of summary judgment, the court will reset pre-trial deadlines and a trial date, as necessary.

OPINION

I. Motion for Class Certification

A two-step analysis governs certification of a class action under Rule 23. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). First, a class must satisfy the four threshold requirements of Rule 23(a): numerosity, commonality, typicality and adequacy of representation. *Id.* Second, the party seeking certification must satisfy one of the three alternatives under Rule 23(b). *Id.* The proponent of the class bears the burden of demonstrating that the class meets all of these requirements by a preponderance of the evidence. *Id.*

The trial court must itself engage in a "rigorous analysis" to determine that the requirements of Rule 23 have been satisfied. *CE Design, Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011). As a result, Rule 23 considerations may overlap

---

[3] If that date or time does not work for the parties, they should promptly confer and confirm another date and time on or around that set above by contacting my judicial assistant, Melissa Hardin, at 608-264-5087.

3

with the merits of the case. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Where they do, "the judge must make a preliminary inquiry into the merits." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). If material factual disputes exist, the court must even receive evidence and resolve those disputes before determining whether to certify the class, but "should not turn the class certification proceedings into a dress rehearsal for the merits." *Messner*, 669 F.3d at 811.

Here, plaintiffs seek certification of a single class that covers both theories of recovery, or in the alternative, two subclasses that respectively address the two theories. While both theories here concern overtime pay calculations, the claims rest on different facts and questions of law. Still, there appears to be no conflict of interest. In other words, the interests of class members asserting a cash fringe rate claim are not at odds with the interest of class members asserting a straight-time hourly rate claim. Specifically, these claims are *not* mutually exclusive -- a class member could have been subject to either or both alleged overtime miscalculations. As such, two subclasses are *not* required. *See generally* 3 William B. Rubenstein *et al.*, *Newberg on Class Actions* § 7:29 at pp.149-50 (5th ed. 2013) ("Because there is no conflict of interest at issue, there is no necessity that each subclass have different representation and independently comply with all of the requirements of Rule 23(a), (b), and (g)."). At some point, subclasses may be helpful from a management perspective, but the court will consider plaintiff's motion as seeking to certify a single class concerning both overtime challenges, which would also cover both FLSA collective action claims. *See id.* (explaining the difference between compulsory subclasses to cure conflicts and permissive subclasses for management purposes).

**A. Rule 23(a) Requirements**

  **i. Numerosity**

The numerosity requirement is satisfied when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs represent, and defendants stipulate, that at least 40 employees were paid overtime without accounting for the cash fringe rate, and at least 22 employees were paid overtime based on the rate for the work performed during overtime hours. (Pl.'s Br. (dkt. #46) 7 (citing Ho Decl., Ex. 2 (dkt. #20-2) (defendant's stipulation).) Because the court is considering plaintiff's motion as to certifying a single class, there are a minimum of 40 members, and perhaps more, if some of the 22 employees asserting straight time hourly rate claims are not counted in that 40. "The Seventh Circuit has indicated that a group as small as forty may satisfy the numerosity requirement." *Armes v. Sogro, Inc.*, No. 08-C-0244, 2011 WL 1197537, at *2 (E.D. Wis. Mar. 29, 2011) (citing *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969)). This is consistent with "[t]he rule of thumb adopted in most courts . . . that proposed classes in excess of 40 generally satisfy the numerosity requirement." 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:5 (8th ed. 2011) (collecting cases). Accordingly, the numerosity appears to be satisfied, if barely.

  **ii. Commonality**

To satisfy the commonality requirement of Rule 23, plaintiffs must demonstrate there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A single, common issue will do, if it is "capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of

5

each of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551, 2556. Furthermore, the commonality standard requires that plaintiffs do more than "merely" demonstrate "that they have all suffered a violation of the same provision of law." *Id.* (internal quotation marks omitted). Plaintiff must show that "the class members have suffered the same injury." *Id*.

Here, plaintiffs' have put forth sufficient evidence for a reasonable trier of fact to find that PGA has policies of (1) not including cash fringe in the overtime calculation and (2) calculating overtime based on the rate of pay for the work completed during overtime hours, rather than the average straight time hourly rate earned during the workweek. Defendant's challenge primarily concerns the latter claim, directing the court to purported evidence that employees, at times, were paid overtime calculated using the average wage rate. (Def.'s Opp'n (dkt. #78) 12-13.) In its analysis, however, defendant relies on an unsupported assumption that "PGA rounds employees' time to the nearest half hour." (Id. at 13.)

Comparing defendant's math to that of plaintiffs', a key takeaway would appear to be that there is very little money at stake with respect to this claim. The examples provided by the parties demonstrate that the difference in pay (at least on a weekly basis) between overtime calculated based on the average straight time hourly rate and the rate for the overtime work is a matter of cents. (See, e.g., Def.'s Opp'n (dkt. #78) 12-14; Pl.'s Reply (dkt. #82) 14-18.) Nonetheless, defendant's analysis does not undermine plaintiffs' evidence that defendants' have a policy of calculating overtime based on the rate of pay for the work completed during overtime hours.

6

Satisfied that plaintiffs have put forth sufficient evidence to support a finding that defendants have adopted the two challenged policies, the common issues are whether these policies violate state law. In response, defendant simply challenges whether its calculation of overtime based on the rate of pay for the overtime hours worked violates state law, at least for some employees. (Def.'s Opp'n (dkt. #78) 16-19). This response, however, addresses the *merits* of plaintiffs' cash fringe claim, not whether the claim is amenable to classwide proof. Regardless, the court finds that whether PGA's overtime policies violate state law are capable of classwide resolution, thus easily satisfying the commonality requirement of Rule 23(a)(2).

### iii. Typicality

Typicality for Rule 23(a) purposes requires that a named plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). For this reason, typicality will often overlap with the commonality requirement. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Applied with care, however, the former standard should ensure that "a plaintiff with typical claims will pursue his or her own self-interest in the litigation and in so doing will advance the interests of the class members, which are aligned with . . . those of the representative." *Insolia v. Phillip Morris, Inc.*, 186 F.R.D. 535, 544 (W.D. Wis. 1998) (quoting 1 Newberg & Conte, *Newberg on Class Actions* § 3.13 (3d ed. 1992)).

Named plaintiffs and proposed class representatives Schilling, Krohn and Sinclair were all subject to the same policies excluding cash fringe from the overtime pay calculation and calculating overtime based on the rate of pay for the work completed during overtime hours as the putative class members. Moreover, defendant offers no reason why plaintiffs' claims are *not* typical of the other class members, or how their self-interest would diverge from the interest of the class more broadly. Instead, defendant's opposition regurgitates the same commonality arguments, which the court already rejected above. Since plaintiffs Schilling, Krohn and Sinclair's claims arise from the same legal theory as the class as a whole, the court finds the typicality requirement satisfied.

    iv.    **Adequacy of Representation**

The adequacy requirement under Rule 23 is intended to ensure that "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A class representative is *not* adequate if he is subject to a defense to which other class members are not subject or could not prove the elements of the class claim for reasons particular to him. *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724-25 (7th Cir. 2011).

Defendant offers a cursory challenge to Schilling and Krohn's adequacy based on the fact that they worked for PGA for a limited period of time and do not maintain contact with other PGA employees. (Def.'s Opp'n (dkt. #78) 23-24.) Schilling and Krohn worked for PGA for approximately two and a half months during their summer vacation from college. While their limited employment may impact the extent of their damages, the fact that they initiated this lawsuit, sat for depositions and otherwise engaged in discovery

provides sufficient evidence of their interest in pursuing their own claims and those of a like class of employees.

Moreover, the fact that they have not maintained contact with other employees does not undermine their ability to represent the class fairly. Notice to class members will be directed by the court and coordinated by class counsel. Once represented by counsel, the class representatives need not (and arguably, should not) play a role in communicating with other class members outside privileged conversations involving legal counsel.

Defendant also contends that Sinclair in particular is not an adequate representative because he "testified at his deposition that he views this lawsuit as an 'opportunity to make the playing field more level.'" (Def.'s Opp'n (dkt. #78) 26 (quoting Schilling Depo. (dkt. #51) 57.) Defendant assumes that "leveling the playing field" means something different than -- and is in conflict with -- "recover[ing] wages as required by law," but offers no reason for this assumption, nor can the court find any. (*Id.*) Indeed, absent more, this is a silly argument that warrants no response, other than to note the following. First, most parties, and certainly most plaintiffs, would, if asked, likely either say or agree that vindicating their rights in court was an attempt "to level the playing field." Second, even assuming Sinclair's testimony encompassed labor relation issues that extend beyond the claims of this lawsuit, it does not raise a conflict of interest or otherwise call into question his ability to represent the interests of his subclass fairly, unless defendant had actual evidence that Sinclair would subvert his obligations to do just that in favor of his own, broader agenda.

In addition to the named plaintiffs, courts are also required to determine whether the proposed class counsel is adequate. *See Dukes*, 564 U.S. 338, 350 n.5 (explaining that adequacy "raises concerns about the competency of class counsel and conflicts of interest" (quoting *Falcon*, 457 U.S. at 157–158, n.13)). Here, defendant challenges proposed class counsel's adequacy based on some missteps in this case, including: (1) an alleged travel time claim, which defendant contends plaintiff's counsel should have known at the time of pleading was meritless; (2) the inadvertent enclosure of a Wisconsin prevailing wage consent form in the FLSA collective action notice; and (3) the failure to file a third amended complaint timely as directed by the court.[4]

Certainly, the court agrees these are reasons for concern, *and* it has warned plaintiff's counsel to "focus on the work at hand." (6/20/17 Order (dkt. #108) 6.) In light of plaintiffs' counsel's and his law firm's experience handling class action employment cases, however, the court neither finds that any of these missteps call into question counsel's competence, nor "create[] a serious doubt that counsel will represent the class loyally." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011); *see also Spoerle v. Kraft Foods Glob., Inc.*, 253 F.R.D. 434, 442 (W.D. Wis. 2008) (rejecting adequacy challenge to class counsel based on mistake of sending out a class notice without court approval). While the court finds the adequacy requirement satisfied, the

---

[4] Defendant also points to a sanction for a discovery-related dispute in another case. The court similarly finds that this sanction, even coupled with the other missteps noted by defendant in this case, does not rise to the level of "serious doubt" necessary to find class counsel inadequate.

court will continue to monitor class counsel's actions and will not hesitate to require either substitution of counsel or the arrangement of co-class counsel, if required.

### B. Rule 23(b)(3) Requirements

Having satisfied the four requirements of Rule 23(a), plaintiffs must still fulfill at least one of the requirements of Rule 23(b) for certification of a class action. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012). Here, plaintiffs move for certification under Rule 23(b)(3), which requires plaintiffs to show both that: (1) "questions of law and fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### i. Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance requirement is not satisfied if "individual questions . . . overwhelm questions common to the class." *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 468 (2013). On this point, the Seventh Circuit has provided specific instructions as to how the predominance inquiry should be framed:

> [T]he class claim that PNC had an unofficial policy that left it liable under the Fair Labor Standards Act and Illinois Law would prevail or fail for the class as a whole. "In no event will the individual circumstances of particular class members bear on the inquiry." *Amgen*, 133 S. Ct. at 1191. It makes no difference to the class claim as a whole how many hours of off-the-clock work each employee worked or the intent of the manager. *These would be issues for the portion of the suit in which*

11

> *individual damages are assessed* . . . . In other words, "[a] failure of proof on the *common* question . . . ends the litigation and thus will never cause individual questions of reliance or anything else to overwhelm questions common to the class." *Amgen*, 133 S. Ct. at 1196.

*Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 378-79 (7th Cir. 2015) (first emphasis added).

Under *Bell*, therefore, questions concerning damages for individual class members, such as the number of hours each employee worked, do *not* predominate over the common contention regarding whether the two challenged policies for calculating overtime pay are unlawful. Indeed, even the potential for "scores of separate trials" to determine the extent to which each class member actually suffered a loss as a result of a policy does not preclude certification because, at minimum, "it will not be necessary in each of those trials to determine whether [defendant] had an illegal policy." *Id.* at 379-380; *see also McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012).

With respect to this requirement, defendant again repeats its challenge as to whether the average straight time hourly rate claim satisfies the commonality requirement. The court rejects this argument for the same reason as described above. Plaintiffs have put forth sufficient evidence to support a finding that defendant has adopted a policy of calculating overtime based on the rate of pay for the work completed during overtime hours, rather than the average straight time hourly rate earned during the workweek. Defendant also opposes class certification on the basis that plaintiffs have not demonstrated that these policies are unlawful. As also already addressed, this argument goes to the *merits* of plaintiffs' claim, rather than whether a common liability issue on the legality of the policies predominates over individual issues concerning the amount each

12

class member worked. In light of *Bell*, therefore, the court finds that plaintiffs have made a sufficient showing that common issues will predominate over individual issues under Rule 23(b)(3).

   ii.   **Superiority**

The court must also determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Relevant matters for consideration include class members' interests in individually litigating their claims; the extent and nature of competing litigation; the desirability of concentrating the litigation in the particular forum; and the likely difficulties of managing a class action. *Id.* Ultimately, the case must be one "in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods.*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3) advisory committee note to 1966 Amendment).

In challenging superiority, defendant once again largely rehashes its arguments concerning commonality and predominance. Accordingly, the court's response is much the same. While determining damages may well require separate trials (or at least individualized proof), the Seventh Circuit has already ruled that the need for separate damages trials does not preclude a finding of superiority. *See Bell*, 800 F.3d at 379-80 ("If the class prevails in demonstrating that PNC had an unofficial policy or practice that required employees class-wide to work off-the-clock overtime hours, scores of separate trials might be necessary to determine which class members were actually adversely affected by

the policy and if they were, what loss each class member sustained. At least it will not be necessary in each of those trials to determine whether PNC had an illegal policy of denying pay for off-the-clock work."). In fact, a single, class trial on whether an unofficial, unlawful policy existed is superior in terms of efficiency to requiring multiple individual actions seeking resolution of the same liability question or, at minimum, a determination of the preclusive nature, if any, on the determination of liability against the defendant in each individual lawsuit.

Defendant also argues that a class action is not superior because the "potential damages to plaintiffs is not too small to make individual actions economically impracticable." (Def.'s Opp'n (dkt. #78) 34.) As mentioned, this may not be true for some, if not many, of the class members. Regardless, the *possibility* that enough money may be at stake to motivate most individual claimants, however, does not undermine a finding of superiority, especially given that litigation costs may outweigh individual damages for many class members. *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). For these reasons, the court agrees with plaintiffs that a class action is a superior method of adjudication.

### C. Certification of Class

Consistent with the discussion above, the court will grant certification of the following class under Rule 23(b)(3):

> All persons who were employed by PGA, Inc., on or after March 31, 2014, who (i) did not receive overtime pay equal to 1.5 times both their base rate of pay and their cash fringe rate, (ii) were paid overtime based on the rate of pay for the work completed during overtime hours, rather than the average

14

> straight time hourly rate earned during the workweek, or (iii) both.

The court will also appoint named plaintiffs Eric Schilling, Blaine Krohn and Erik Sinclair as the class representatives, and it will appoint Attorney Yingtao Ho and The Previant Law Firm, S.C., as class counsel.

A district court's grant of certification, however, is not final. *See Eggleston v. Chi. Journeymen Plumbers' Local Union No.* 130, 657 F.2d 890, 896 (7th Cir. 1981) ("[A] favorable class determination by the court is not cast in stone. If the certification of the class later deemed to be improvident, the court may decertify[.]"); *Espenscheid v. DirectSat USA LLC*, No. 09-cv-625-bbc, 2011 WL 2009967, at *7 (W.D. Wis. May 23, 2011), *aff'd*, 705 F.3d 770 (7th Cir. 2013). Therefore, the court encourages plaintiffs to continue to develop a trial plan that will ensure this case remains manageable as a class action. Similarly, defendant may revisit the issue should circumstances change materially.

### D. Notice

For any class action certified under Rule 23(b)(3), the court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice must clearly, concisely, and comprehensibly state: (1) the nature of the action; (2) the class definition; (3) the class claims, issues or defenses; (4) that a class member may enter an appearance through an attorney should he or she desire; (5) that the court will exclude any class member requesting exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members,

regardless of whether a member may have a stronger individual claim of liability not dependent on proof of an unofficial policy to deny overtime pay. *Id.*

The parties are directed to meet and confer on the appropriate class notice, and submit a proposed joint notice, if possible, on or before April 4, 2018. If the parties are unable to reach an agreement, plaintiffs should submit their proposed version by that same deadline, with defendant's written response and proposed, alternative version due by April 11, 2018.

## II. Decertification of Conditionally Certified FLSA Collective Action

The court now turns to defendant's motion to decertify the conditional FLSA collective action under a two-step process. The FLSA enables employees to bring their "claims through a 'collective action' on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of Chi.*, 605 F.3d 445, 448 (7th Cir. 2010) (citing 29 U.S.C. § 216(b)). In determining whether opt-in plaintiffs are similarly situated, district courts in this circuit consider whether: (1) their factual and employment settings are similar; (2) affirmative defenses available to the defendant must be applied individually to each plaintiff; and (3) fairness and procedural concerns weigh in favor of a collective action. *See, e.g., Gomez*, 306 F.R.D. at 174; *Espenscheid*, No. 09-cv-625-bbc, 2011 WL 2009967, at *4.

The Seventh Circuit has acknowledged the blurring of lines between the nominally different standards governing class actions under Rule 23 and collective actions under the FLSA. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) ("[T]here isn't a good reason to have different standards for the certification of the two different types of action[.]"). Concluding that the different consequences between the opt-in

procedure for collective action under the FLSA and the opt-out requirement of a class action governed by Rule 23(b)(3) were of no consequence in *Espenscheid*, the court treated the FLSA classes and Rule 23 classes together, as a single class. *Id.* at 771-72. Not surprisingly, defendant's arguments for decertifying the FLSA collective action are largely the same arguments raised in opposition to Rule 23 class certification.

Specifically, defendant seeks decertification based on its argument that individual issues predominate over common issues or, relatedly, that the named plaintiffs' claims are not typical of other employees' claims (because there is no typical claim).[5] Since the court already rejected those arguments, it finds no basis for decertifying the FLSA collective action based on overlapping charges.

In addition, defendant also challenges the collective action on the basis that only 11 individuals opted in. While the number of class members is pertinent to class certification under Rule 23, defendant does not direct the court to any FLSA opinion requiring a threshold number to maintain a collective action. To the contrary, this court has declined to decertify a collective action where only eight employees opted in. *See Bitner v. Wyndham Vacation Resorts, Inc.*, No. 13-CV-451-WMC, 2016 WL 7480428, at *15 (W.D. Wis. Dec. 29, 2016).

For the reasons described above in granting plaintiffs' Rule 23 motion, therefore, the court concludes that plaintiffs are similarly situated to those employees who have opted

---

[5] Defendant also raises concerns based on a prior motion for leave to amend the complaint, which the court addressed in a previous opinion denying in part and granting in part leave to amend. (2/16/17 Op. & Order (dkt. #61).)

into the FLSA collective action.  Accordingly, the court will deny defendant's motion for decertification.

ORDER

IT IS ORDERED that:

1) Plaintiffs' motion for class certification (dkt. #45) is GRANTED.  The court certifies the following class pursuant to Rule 23(b)(3):

    All persons who were employed by PGA, Inc., on or after March 31, 2014, who (i) did not receive overtime pay equal to 1.5 times both their base rate of pay and their cash fringe rate, (ii) were paid overtime based on the rate of pay for the work completed during overtime hours, rather than the average straight time hourly rate earned during the workweek, or (iii) both.

2) The court appoints Eric Schilling, Blaine Krohn and Erik Sinclair as the class representatives.

3) The court appoints Attorney Yingtao Ho and The Previant Law Firm, S.C. as class counsel.

4) Defendant's motion for decertification (dkt. #53) is DENIED.

5) On or before April 4, 2018, the parties should submit a joint proposed form and method of notice, or if unable to agree, plaintiffs should submit their own proposed notice, with defendant to respond by April 11, 2018.

6) The court will hold oral argument on the parties' cross motions for summary judgment on April 26, 2018, at 10:00 a.m.

Entered this 14th day of March, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge