IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ERIC SCHILLING, BLAINE KROHN,
and ERIK SINCLAIR,

                  Plaintiffs,                  OPINION AND ORDER

    v.
                                                                        16-cv-202-wmc
PGA INC.,

                  Defendant.

      The parties cross-move for summary judgment in this hybrid FLSA collective action and Rule 23 class action claiming violations of Wisconsin state labor laws. (Dkt. ##85, 90.) Because the claims largely turn on questions of statutory and regulatory interpretation, the court opted to hold an oral argument on their motions. Having reviewed the parties' briefs and supporting materials, and now having the benefit of additional argument, the court will grant summary judgment to defendant as a matter of law on (1) plaintiffs' state law claim and FLSA claim based on a "cash fringe" overtime theory and (2) plaintiffs' state law claim based on the straight time average rate overtime theory. This leaves only plaintiff Eric Schilling's individual claim that he was misclassified as a subjourney person, rather than as a general laborer. Given the parties' material factual disputes about Schilling's alleged work as a general laborer, the court will deny plaintiffs' motion as to this claim and proceed to a bench trial to resolve those disputes.[1]

---

[1] Only plaintiffs moved for summary judgment on this claim.

## UNDISPUTED FACTS[2]

### A. Overview of the Parties

Plaintiffs Eric Schilling and Blaine Krohn were employed by of PGA, Inc. from May 21, 2015, to August 6, 2015. During this period, both worked on the UWSP Debot Hall Project. Plaintiff Eric Sinclair was also employed by PGA between September 2014 and August 2015. During his employment, he worked on the Harvey Hall Renovation - Phase 2 Project.

### B. Cash Fringe Overtime Claim

The Wisconsin Department of Workforce Development ("DWD") issues prevailing wage determinations for each eligible project by trade with separate columns for that trade's hourly basic rate of pay, fringe benefit rate, and total-package-compensation hourly rate. For each Wisconsin prevailing wage project on which PGA worked, therefore, DWD issued a prevailing wage determination, including the two projects on which plaintiffs worked.[3]

PGA also provided some fringe benefits to its employees during this relevant period, such as compensation for health insurance premiums and contributions to their 401(k) plans. The hourly value of employer contributions for fringe benefits can be computed by dividing the annual cost of the contributions by 2,080 hours. Typically, the hourly value

---

[2] Unless otherwise noted, the court finds the following facts materials and undisputed.

[3] Defendant points out that Krohn and Schilling's wage rates were governed by separate prevailing wage determinations for apprentices and/or subjourney persons, but like the other prevailing wage determinations, these also include an hourly basic rate of pay, hourly fringe benefit, and the total package compensation hourly rate.

of the fringe benefits paid by PGA on behalf of its employees is *lower* than the fringe benefit rate on the prevailing wage determination. For prevailing wage projects, therefore, PGA must pay its employees this deficit as a cash payment reported on a W-2 as "wages, tips or other compensation." The parties refer to this payment as the "cash fringe."

In calculating overtime, PGA pays its employees on prevailing wage jobs 1.5 times the hourly basic rate, then it adds the cash fringe payment to that amount. PGA does not, however, pay an overtime premium on the cash fringe payment. In other words, PGA does not pay its employees 1.5 times the combined hourly basic rate of pay and the cash fringe. As an illustration, if an employee's basic rate was $50 and his cash fringe was $10, for an overtime hour, PGA would pay the employee $85 (($50*1.5) + $10), rather than the $97.50 (($50 + $10)*1.5) that plaintiffs claim is required under the FLSA and state wage and labor law.

Material to plaintiffs' claim of willfulness, defendant proposes several other facts about its efforts to confirm the method for calculating overtime. DWD advises Wisconsin employees that payments for cash fringe benefits need *not* be included in the overtime premium calculation.[4] Indeed, DWD issued wage determination letters to PGA advising how employers should calculate overtime for state prevailing wage projects. PGA's Vice President and CFO Tom Barnetzke even had telephone conversations with multiple people in DWD's prevailing wage department, confirming that the overtime premium need not

---

[4] Plaintiffs do not dispute this, but as addressed in the opinion below, argue that the DWD's publications are inconsistent with DWD Admin. Code § 290.05.

be paid on the cash fringe portion.[5]  Finally, on October 22, 2014, Gail Woznicka, PGA's controller, attended a presentation by the Association of Building Contractors entitled "Prevailing Wage: The Basics and Beyond" that addressed state and federal prevailing wage laws.  Among other topics, the question of overtime pay was covered, and Woznicka noted in her copy of the PowerPoint presentation that overtime pay for both federal and state law prevailing wage projects is calculated based on the hourly basic rate only.[6]

### C. Straight Time Average Rate Overtime Claim

During the week of July 20-26, 2015, Sinclair was credited by PGA as having worked 31 hours of straight time as a general laborer, 9 hours of straight time as a sheetmetal worker, and 8 hours of overtime as a general laborer.  The overtime pay was calculated using the general laborer rate of $24.21 per hour, while Sinclair's sheetmetal worker rate was $28.05.  Applying the resulting math, PGA would have paid Sinclair for that week total wages of $1,293.48.  If PGA had paid Sinclair overtime using a straight time average rate, however, he would have made $1,303.85 -- a difference of $10.37.  Plaintiffs contend that they have "identified numerous examples of PGA computing overtime pay as 1.5 time the straight time wage rate for the work performed during overtime hours, rather than 1.5 times the *average* straight time wage rate earned by the employee during the workweek."  (Pls.' PFOFs (dkt. #95) ¶ 24 (citing dkt. #47-7).)  In support, plaintiffs cite to a document titled "payroll analysis," which appears to be a

---

[5] Again, plaintiffs do not dispute this, but argue that the telephone conversations only concerned compliance under Wisconsin law, not under the FLSA.

[6] Once again, plaintiffs dispute whether Woznicka's understanding only covered federal law requirements, not what Woznicka was told, nor her resulting understanding of Wisconsin law.

spreadsheet created by plaintiffs' counsel, listing 13 examples of employees purportedly being paid overtime based on the rate of pay for the work actually completed during the overtime hours, rather than on a straight time average rate. (Dkt. #47-7.)

Putting aside the possible problems with plaintiffs' proof,[7] PGA nonetheless admits that, at least in some instances, for some employees, it computes overtime using the rate of work performed by the employee during the overtime hours "pursuant to an agreement with the employee." (Def.'s Resp. to Pls.' PFOFs (dkt. #105) ¶ 23.) In other instances, however, PGA would calculate overtime pay using a blended, average straight time wage rate earned by the employee during the workweek. (*Id.*) In still other instances, PGA acknowledges calculating "overtime for PGA employees who worked on two or more trade classifications during the work week based on the *higher* wage rate worked." (*Id.* (emphasis added).)

**D. Individual Prevailing Wage Claim**

The bulk of plaintiffs' proposed findings of facts concern individual claims brought by Schilling and Krohn specifically, challenging the categorization of their work on the Debot Hall project as subjourney sheet metal work, rather than general laborer work. As the former, they were paid $18.10 per hour for this work, while the general laborer rate was $34.88. As detailed in the proposed findings, Schilling and Krohn aver that during the project -- and they kept track of their time on various tasks -- they worked 90 to 95% of their time on drilling holes through concrete floors and walls and related work, e.g.,

---

[7] In response to this proposed finding, defendant contends that the document cited for support was created by plaintiffs' counsel and not maintained by PGA, is confusing, is inaccurate and should be stricken as an improper legal conclusion.

cleaning, prepping, etc. (Pls.' PFOFs (dkt. #95) ¶¶ 27-50.) PGA does not dispute that the hole drilling work would probably fall in the general laborer classification rather than the subjourney sheet metal one.

OPINION

I. Class Claims

   A. Cash Fringe Overtime Theory

As an initial matter, there appears to be no factual dispute that PGA does *not* include the cash fringe payment in calculating the overtime rate of pay. Instead, the parties dispute is over whether this policy violates the law. Plaintiffs claim that defendant's disregard of the cash fringe payment in calculating overtime violates both Wisconsin state law and the FLSA. Accordingly, the court addressed these legal questions at the outset.

   i. State Law Claim

In arguing that the exclusion of the cash fringe benefit from the overtime rate computation violates Wisconsin law, plaintiffs first direct the court to Wis. Admin. Code DWD § 274.03, which requires employers to "pay to each employee time and one-half the regular rate of pay for all hours worked in excess of 40 hours per week." However, this language from the administrative code neither specifically addresses prevailing wage jobs, nor is the phrase "regular rate of pay" defined in a way that helps to resolve the parties' legal dispute.

Instead, Wis. Admin. Code DWD § 290.05 expressly governs overtime payments for prevailing wage jobs and requires some unpacking. The opening sentence of the

6

provision instructs that overtime is calculated as "at least 1.5 times the *hourly basic rate of pay*." Wis. Admin. Code DWD § 290.05 (emphasis added). The regulation then sets forth a minimum threshold of payment. The rate used to calculate the overtime payment *cannot be less than* (1) "the amount determined by the department as the hourly basic rate of pay"; (2) "the straight time cash payment made to the [employee]"; *or* (3) "the employee's normal hourly basic rate of pay." *Id.* (emphasis added).

With respect to the first provision, the definition of "hourly basic rate" for section 290 was expressly adopted from Wis. Stat. § 103.49(b). Wis. Admin. Code § 290.01(9). Before repeal, Wis. Stat. § 103.49(b) defined "hourly basic rate" as

> hourly wage paid to any employe, excluding any contributions or payments for health insurance benefits, vacation benefits, pension benefits and any other bona fide economic benefits, whether paid directly or indirectly.

(Pls.' Reply (dkt. #111) 5; *see also* Def.'s Opp'n (dkt. #99) ("It is undisputed that 'hourly basic rate of pay' is a *defined* term under state prevailing wage laws." (citing Wis. Stat. § 103.49(1)(b); Wis. Admin. Code § 290.01(9)).) The parties agree that definition is still operative here.

Plaintiffs nevertheless argue that because the cash fringe is paid directly to employees and treated as wages for tax purposes, it does not fall within the definition of "bona fide economic benefit" provided in the Wisconsin Administrative Code. Specifically, the code defines "bona fide economic benefit" as

> an economic benefit for which an employer makes irrevocable contributions to a trust or fund created under 29 USC 186(c) or to any other bona fide plan, trust, program or fund no less often than quarterly or, if an employer makes annual contributions to such a bona fide plan, trust, program or fund,

7

>   for which the employer irrevocably escrows moneys at least quarterly based on the employer's expected annual contribution.

Wis. Admin. Code DWD § 290.01(3).

While the court credits plaintiff's argument as far as it goes, the categories of payments or contributions excluded from "hourly basic rate" under Wis. Admin. Code § 290.01(9) does not appear to be limited by the definition of bona fide economic benefits under § 290.01(3). As set forth above, hourly basic rate encompasses § 290.01(3) payments made both directly or indirectly to employees, whereas the definition of bona fide economic benefits appears to be limited to payments made directly to a "bona fide plan, trust program or fund." Similarly, § 290.05 -- the specific provision governing overtime payments for prevailing wage jobs -- allows for exclusion of "*cash payments* for bona fide economic benefits" from the overtime premium calculation, which also seems to contemplate the exclusion of *direct* payments to employees. All of this is to say that the first provision -- precluding an overtime rate calculation that is less than "the amount determined by the department as the hourly basic rate of pay" -- does not *require* including the cash fringe in the hourly rate determination, and in turn, the overtime premium calculation.[8]

Such an approach is also consistent with the DWD's promulgation of prevailing wage determinations. As demonstrated by the Debot Project determination, the DWD

---

[8] The court considered plaintiffs' proposed supplemental brief on this issue, but it neither addresses nor explains the apparent expansion of the amount excluded from hourly rate under § 290.05. (Dkt. #128-1.) As such, while the court will grant plaintiffs leave to file that brief, it does not change the outcome. Because of this, the court will deny defendant leave to file a supplemental brief as moot.

8

tables show "hourly basic rate" (identified as "HBR") as separate from the "fringe benefit" (identified as "FB"). From the parties' description, the cash fringe falls within the "fringe benefit" category -- it is the difference between PGA's contributions to bona fide benefits and the fringe benefit rate.[9] As such, DWD's determination of hourly basic rate, as shown in the prevailing wage determinations for each job, does not include the cash fringe in the hourly basic rate category.

Finally, plaintiffs appear to concede in their reply brief that their claim is not furthered by the requirement that overtime payment be at least "the amount determined by the department as the hourly basic rate of pay." Instead, they now hang their hat on the third requirement: that it not be less than the "normal hourly basic rate of pay."

Before turning to that last provision, however, plaintiffs also relied on the second provision in their summary judgment briefing, which requires that the overtime payment not be less than the "straight time cash payment." Plaintiffs contend that this phrase should be given its "plain meaning: The payment of cash for hours worked, regardless of whether characterized as wages, attributable to straight time rather than overtime premium compensation." (Pls.' Reply (dkt. #111) 6.) For its part, defendant argues that this phrase "refers to an employee's regular pay when not working on a prevailing wage project." (Def.'s Opp'n (dkt. #99) 3.) As far as the court can tell, and the parties provide no direction, the regulations do not appear to provide a definition for this phrase.

---

[9] *See* DWD Prevailing Wage Determinations for Debot Project, available at http://dwd.wisconsin.gov/PrevailingWageSearch/PrevailingWage/DeterminationDetail/201302561 (listing hourly basic rate as "HBR" and fringe benefit as "FB," with the cash fringe falling within the "FB" category).

9

The court can easily disregard defendant's argument. PGA offers *no* support, nor even attempts an explanation, for the proposition that "straight time cash payment" refers to an employee's rate of pay on non-prevailing wage jobs. Rather, as plaintiffs point out in their summary judgment briefs, the other threshold requirement -- that the overtime premium cannot be less than the "normal hourly basic rate" -- would seem to refer to the rate of pay for non-prevailing wage rates. (Pls.' Reply (dkt. #111) 5 ("Normal refers to pay on non-prevailing wage projects.").) In response to this argument, defendant contends that normal hourly basic rate is the *same* as hourly basic rate. For the reasons explained below, however, this makes no sense. What is the purpose of the third threshold requirement if it is the same as the first? Still, plaintiffs conceded at oral argument that whatever the merits of plaintiffs' argument in their brief, the second provision of the regulation also does not advance their theory that defendant was required to include the cash fringe in the overtime premium calculation.

Instead, as just noted, plaintiffs argued at oral argument that the third provision -- requiring the overtime premium not be less than "the employee's normal hourly basic rate of pay" -- supports their theory that defendant violated state law in calculating overtime on prevailing wage jobs. Yet contrary to their previous position in their summary judgment briefing -- that normal refers to *non-prevailing* wage work -- plaintiffs contend, without any support, that "normal hourly basic rate" must mean the rate of pay an employee actually received. Perhaps realizing its position that "normal hourly basic rate" is the same as "hourly basic rate" flies in the face of basic principles of statutory interpretation, defendant argued at oral argument that the phrase "normal hourly rate of pay" allowed for the

possibility of an employee earning different rates of pay during the same week for different prevailing wage projects.

Both parties, however, missed the most obvious definition *and* one apparently embraced by the DWD: "normal hourly basic rate" means the hourly basic rate on *non-prevailing* wage projects. Indeed, defendant submitted DWD publications that support this straight-forward interpretation. The first, a multi-page document, part of the Labor Standards Information Series, titled "Wisconsin's Prevailing Wage Rate Laws," provides:

> **How is overtime calculated on a public works project?**
>
> Overtime is calculated by multiplying the hourly basic rate of pay, listed on the prevailing wage rate determination for the trade performed by the worker by 1.5. If the worker's normal rate of pay is higher than the hourly basic rate of pay on the prevailing wage rate determination the worker must be paid time and one-half at their normal rate of pay. In either event the amount specified for fringe benefits on the prevailing wage rate determination is required to be paid on all hours worked but not at time and one-half. The practice of "banking" overtime hours is prohibited.

(Driscoll Decl., Ex. A (dkt. #80-1) 9.) An apparent online resource, titled "Prevailing Wage Overtime," similarly provides:

> **Time and one-half** is only calculated on the applicable hourly basic rate of pay indicated on the prevailing wage rate determination or the worker's normal rate of pay, whichever is higher. Fringe benefits are only required to be paid at the straight time rate.

(*Id.*, Ex. B (dkt. #80-2).)

Finally, under Wisconsin law, an agency's interpretation that is reasonable and consistent with the language of a regulation is entitled to deference. *See Kuhnert v. Advanced Laser Machining, Inc.*, 2011 WI App 23, ¶ 11, 331 Wis. 2d 625, 794 N.W.2d 805 ("[A]n

agency's interpretation of its own rules and regulations is controlling unless the interpretation is plainly erroneous or inconsistent with the language of the rule."). Here, the court similarly concludes that the third provision -- the one on which plaintiffs relied at oral argument -- does not further their claim. In light of plaintiffs' failure to identify a requirement under state law that defendant's policy violated, therefore, the court will grant summary judgment to defendant on plaintiff's state law "cash fringe" claim.

ii. FLSA Claim

Plaintiffs' argument with respect to their FLSA claim starts with 29 U.S.C. § 207(e), which defines the "regular rate" of pay as including "all remuneration for employment paid to, or on behalf of, the employee." While this statutory provision carves out various exceptions, plaintiffs contend that none apply here. In particular, plaintiffs argue that the FLSA's exception for fringe benefit compensation in § 207(e)(4) does not apply "when the cash fringe is paid to the employees in cash, rather than contributed to a trustee or other third party who would owe fiduciary responsibilities toward the payment." (Pls.' Opening Br. (dkt. #96) 7 (citing *Flores v. City of San Gabriel*, 824 F.3d 890, 901 (9th Cir. 2016) ("Because the City pays the unused benefits directly to its employees and not 'to a trustee or third person,' its cash-in-lieu of benefits payments cannot be excluded under § 207(e)(4).")).) From this, plaintiffs argue that because PGA's cash fringe payments to its employees on prevailing work projects are taxed, they are not an excepted fringe benefit under § 207(e)(4). (Pls.' Opening Br. (dkt. #96) 7 (citing 26 U.S.C. § 3401 (internal revenue code defining wages)).)

12

In response, defendant argues that it acted on the advice of the DWD and, therefore, cannot be found to violate the FLSA. At most, this may go to whether the violation was willful, but such an argument is not relevant in determining what federal law required. Defendant also cites to 29 C.F.R. § 5.32 from the federal regulations governing federally-financed construction, which provides that "[t]he [Davis-Bacon] act excludes amounts paid by a contractor or subcontractor for fringe benefits in the computation of overtime under the Fair Labor Standards Act." In their reply, however, plaintiffs correctly point out that "[t]he actual Davis-Bacon regulations are clearly inapplicable when PGA's work was performed on W[is]consin prevailing wage projects, rather than federally funded Davis-Bacon projects." (Pls.' Reply (dkt. #111) 3.) Accordingly, this regulatory scheme does not address the required overtime calculation for state-financed construction projects at issue here.

Nonetheless, plaintiffs again fail to point to any support for their argument that "regular rate of pay" necessarily includes the cash fringe under the FLSA. Absent any other guidance, the court turns to the meaning of "regular rate of pay" under applicable state law. And having already concluded that state law does *not* require the cash fringe to be included in the overtime premium calculation for prevailing wage jobs, the court similarly rejects plaintiffs' claim under the FLSA.[10]

---

[10] The parties also moved for summary judgment on plaintiffs' claim that PGA's alleged violation of the FLSA was willful, thus entitling it to a three-year, rather than a two-year, statute of limitations. *See* 29 U.S.C. § 255(a). Having granted judgment to defendant on plaintiffs FLSA claim, the court need not reach this argument, other than to note that the undisputed evidence appears to foreclose a finding that PGA either knew or showed reckless disregard as to the requirements of the FLSA. *See E.E.O.C. v. O'Grady*, 857 F.2d 383, 387 (7th Cir. 1988) (describing

## B. Straight Time Average Rate Overtime Theory

Plaintiffs separately seek to pursue a class-wide claim under state law only for PGA's alleged practice of paying overtime based on the rate for the actual work performed during the overtime hours, rather than a straight-time average hourly rate (or blended rate). In asserting this claim, plaintiffs acknowledge that the FLSA expressly carves out an exception to the requirement that the employer pay overtime based on an average rate, where the overtime premium for "an employee performing two or more kinds of work for which different hourly or piece rates have been established, is computed at rates not less than one and one-half times such bona fide rates applicable to the same work when performed during nonovertime hours." 29 U.S.C.A. § 207(g)(2).

Under Wisconsin state law, however, there is no similar express carve-out exception.[11] Plaintiffs maintain that this court in *Wicke v. L&C Insulation, Inc.*, No. 12-CV-638-WMC, 2014 WL 2957434, at *11 (W.D. Wis. July 1, 2014), "found as a matter of law that Wisconsin requires the employer to calculate an overtime rate of pay equal to the employee's hours worked during a pay period divided into his regular pay for said pay period, rather than use the rate for the type of work the employee performed during overtime hours, to computer overtime pay." (Pl.'s Opening Br. (dkt. #96) 15.) In *Wicke*, however, this court noted that "there may be other acceptable methods of calculating an

---

"willful" standard under FLSA). Because the willfulness issue is moot, the court also need not consider defendant's motion for leave to file supplemental authority on this issue. (Dkt. #124.)

[11] Despite recognizing this express federal carve-out, a related case inexplicably also purports to assert the same claim under the FLSA. *See Sinclair v. PGA, Inc.*, No. 17-cv-224-wmc (W.D. Wis. Mar. 21, 2017).

14

hourly rate of pay," but in that case, "defendant has neither proposed nor explained how its policy of paying on the rate of the specific work that the employee performed during overtime hours satisfied the requirement that an employer calculate an hourly rate for purposes of paying overtime." *Wicke*, 2014 WL 2957434, at *11. Here, unlike in *Wicke*, *plaintiffs'* proposed findings of fact acknowledge that defendant entered into agreements with some of its employees to be paid overtime based on the rate for the work actually performed during the overtime hours. (Pl.'s PFOFs (dkt. #95) ¶ 23.)

In support of this practice, defendant directs the court to a Wisconsin employment law treatise, in which the author states:

> When an employee works during one week at two or more jobs paying different rates of pay or at the same job but at two different hourly rates, Wisconsin regulations require use of a blended rate. *See* 29 C.F.R. § 778.115.[12] The FLSA permits use of an alternative method--that of separate rates. *See* 29 C.F.R. § 778.419. In practice, the DWD will accept either of the two methods applicable under the FLSA.

1 State Bar of Wisconsin, *Wisconsin Employment Law* § 5.41 (6th ed. 2016) (identifying James J. Chiolino as the author of Ch. 5). Unfortunately, the treatise fails to cite any support for the DWD's practice.[13]

---

[12] Oddly, the treatise cites to a *federal* regulation for support of what is required under Wisconsin regulations. That makes no sense.

[13] Tom Barnetzke, PGA's CFO, also attaches a document he purportedly received from a prevailing wage investigator with the DWD, which appears to support defendant's position that the employer and employee may enter into an agreement to pay overtime based on one of the rates worked during the week, rather than an average or blended rate. (*See* Barnetzke Decl., Ex. B (dkt. #107-2).) Having no obvious reliability as an official or business record, nor other obvious indicia of reliability, the document, however, is hearsay, and, therefore, the court cannot and has not considered it for purposes of deciding the issues before it on summary judgment, other than to bolster defendant's state of mind.

15

Defendant also directs the court to the Wisconsin Court of Appeals' decision in *Kuhnert v. Advanced Laser Machine, Inc.*, No. 2010AP333 (Wis. Ct. App. Jan. 11, 2011). (*See* Barnetzke Decl., Ex. A (dkt. #107-1).) However, the *Kuhnert* court only considered *how* to calculate an overtime premium for a salaried employee who the employer improperly deemed exempt from overtime. While the court explains that DWD's methodology for calculating the amount of overtime due is entitled to great deference, the issue actually addressed in the *Kuhnert* opinion has no import on the issue presented here, involving as it does overtime payment calculation for *hourly* workers.

All the court is left with, then, is the proposition that the straight time average rate method is an *acceptable* method for calculating overtime, and plaintiffs' failure to point to any precedent establishing that it is in the *only* acceptable method. More particularly, plaintiffs fail to direct the court to any statute or regulation that precludes individual agreements under state law, similar to those expressly sanctioned under the FLSA.[14] In light of the FLSA's regulation, and absent contrary Wisconsin authority requiring a departure from the parties' various contractual arrangements, the court will grant summary judgment to defendant. Specifically, plaintiffs have failed to identify an obligation under

---

[14] Plaintiffs spend much time in their briefs arguing about the import of § 207(g)(2) under the FLSA, and subsequent to that briefing, filed a motion for leave to cite supplemental authority holding that § 207(g)(2) is an exemption, rather than an exception to § 207(a)(1). (Dkt. #126.) Because this argument is so far afield from the issue before this court, the court will deny plaintiffs' motion to cite supplemental authority.

Wisconsin state law to calculate overtime using the straight time average method, which is a necessary predicate for their class claim.[15]

## II. Individual Claims

As previously noted, plaintiffs Schilling and Krohn also pursue individual state law claims based on allegations that they were misclassified as subjourney sheet metal workers, entitling them to the higher general laborer rate both for straightforward pay and calculation of overtime. In responding to proposed findings of fact, defendant concedes that drilling holes properly falls within the general laborer category but contends that Schilling's and Krohn's detailed accounts of their work *and* the amount of time worked in that category are subject to credibility challenges. Specifically, defendant argues that their detailed accounts are materially disputed by PGA's corporate representative, who testified that "there's no way he could remember from day to day at this point what anybody did a year and a half ago on a day-to-day basis, nor could Mr. Krohn and Mr. Schilling." (Def.'s Opp'n (dkt. #99) 21-22.)

While the court shares plaintiffs' concern that defendant could have developed additional evidence to dispute Schilling's and Krohn's accounts of their day-to-day work experience, plaintiffs have the burden of proof. Accordingly, plaintiffs "must lay out the elements of the claim, cite the facts [that they] believe [] satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor

---

[15] Perhaps plaintiffs would have individual claims based on the lack of an agreement to calculate overtime based on the rate of pay on the work performed during the overtime hours, but plaintiffs purport to proceed on a class claim and, therefore, their theory of liability must be amenable to classwide proof.

of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015). Because defendant has pointed out reason for uncertainty, especially as to the percentage of time plaintiffs worked as general laborers, the court will deny plaintiffs' motion for summary judgment with respect to the amount of time plaintiffs Schilling and Krohn spent on a day-to-day or week-to-week doing general laborer work, leaving that issue for a trail to the bench.

ORDER

IT IS ORDERED that:

1) Plaintiffs' motion for summary judgment (dkt. #85) is DENIED.

2) Defendant PGA, Inc.'s motion for summary judgment (dkt. #90) is DENIED AS MOOT IN PART AND GRANTED IN PART, as described above.

3) Defendant's motion for leave to file supplemental authority (dkt. #124) is DENIED AS MOOT.

4) Plaintiffs' motion for leave to file supplemental authority (dkt. #126) is DENIED.

5) Plaintiffs' motion to file a supplemental brief (dkt. #128) is GRANTED.

6) Defendant's motion for leave to file a response brief (dkt. #130) is DENIED AS MOOT.

7) The clerk's office is directed to enter judgment in defendant's favor at the close of this case on plaintiff's cash fringe state law claim, cash fringe FLSA claim, and straight time average rate overtime state law claim.

8) The court will hold a telephonic scheduling conference to set a date for the bench trial on plaintiffs' remaining individual claims brought by Schilling and Krohn on October 31, 2018, at 11:00 a.m.

Entered this 23rd day of October, 2018.

                                BY THE COURT:

                                /s/
                                _____
                                WILLIAM M. CONLEY
                                District Judge