UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

**Eric Schilling**
**Blaine Krohn**
**Erik Sinclair**

**On behalf of themselves and
all others similarly situated**

    **Plaintiffs**

    **v.**                                                            **Case No. 16-CV-202**

**PGA Inc.**

    **Defendant.**

---

**MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES'
JOINT MOTION FOR PRELIMINARY SETTLEMENT APPROVAL AND APPROVAL
OF CLASS NOTICE**

---

## INTRODUCTION

Class representatives Eric Schilling, Blaine Krohn, and Erik Sinclair, along with Defendant PGA, Inc. ("PGA") jointly seek preliminary approval of a proposed settlement of the class claims advanced by this action, which alleged violations of the overtime provisions of both the Fair Labor Standards Act ("FLSA") and Wisconsin law. The proposed settlement resolves all pending class claims in return for PGA paying an agreed upon amount to be distributed to class members on a pro-rata basis based upon the relative sizes of their claims. The proposed settlement resulted from arms-length negotiations by experienced counsel, following the Plaintiffs' appeal from the Court's grant of summary judgment for, and entering judgment in favor of, PGA on the overtime pay computation claims.

Because the terms of the proposed settlement of class claims are fair, reasonable, and adequate, the parties jointly request that the Court:

(i)     Preliminarily approve the settlement attached as Exhibit A;

(ii)    Approve the Notice attached as Exhibit B for distribution by mail to the Collective Class Members and Rule 23 Class Members;

(iii)   Find that the Notice to be given constitutes the best notice practicable under the circumstances, including individual notice to all Rule 23 Class Members and Collective Class Members who can be identified with reasonable effort, and constitutes valid, due, and sufficient notice to Rule 23 Class Members and Collective Class Members in full compliance with the requirements of applicable law, including the due process clause of the United States Constitution;

(iv)    Authorize Class Counsel to mail to all class members the Class Notice.

(v)     Direct that all Rule 23 Class Members shall be bound by this Agreement in the event the Court issues a Final Order Approving Settlement.

(vi)    Direct that all Collective Class Member shall be bound by this Agreement in the event the Court issues a Final Order Approving Settlement.

(vii)   Schedule a Fairness Hearing to determine whether this Settlement Agreement should be approved as fair, reasonable, and adequate and whether the proposed Final Order Approving Settlement should be entered;

(viii)  Direct that Class Counsel shall file a Motion for Approval of Attorney's Fees and Costs at least twenty-one (21) days prior to the Fairness Hearing, and further that any supplemental brief in support of final approval of the Settlement Agreement, including the Incentive Payments, or in response to any objections to the application

for attorney's fees and costs be filed at least seven days before the Fairness Hearing, and that the Court shall determine at the Fairness Hearing in what amount attorney's fees and reimbursement of costs and expenses should be awarded to Class Counsel; and

(ix) Direct that any Rule 23 Class Member or Collective Class Member who wishes to object in any way to the proposed Settlement Agreement must file and serve such written objections per the instructions set forth in the Notice no later than thirty (30) days after the mailing of the Notice, together with copies of all papers in support of his or her position. The Class Notice shall state that the Court will not consider objections of any Rule 23 Class Member or Collective Class Member who has not properly served copies of his or her objections on a timely basis.

## **PROCEDURAL BACKGROUND**

The original complaint in this case was filed on March 31, 2014; and included FLSA consent forms from Eric Schilling, Blaine Krohn, and Eugene Nickell. (Docket #1.) Of the claims subject to the settlement, the only one included in the original complaint was that cash payments PGA labelled as cash fringe payments should be included when computing the Plaintiffs' FLSA and Wisconsin law overtime pay. (Id.) On October 30, 2016, the parties consented to the filing of a Second Amended Complaint that removed Nickell as a Named Plaintiff. (Docket #15-16.)

The Court accepted the parties' stipulation on conditional certification of the FLSA claims on November 3, 2017. (Docket #24.) A total of 9 employees subsequently opted into the lawsuit including Eric Sinclair. (Docket #25, 27, 32, 34-36.) On February 16, 2017, the Court granted the Plaintiffs' motion to amend the complaint in part, permitting the Plaintiffs to both change Erik Sinclair from an opt-in plaintiff to a named plaintiff; and to bring their Wisconsin law claim that

overtime pay must be computed using the average straight time wage earned during the week. (Docket #61.)

On March 14, 2018, the Court granted the Plaintiffs' motion to certify a Rule 23 class and denied PGA's motion to decertify the FLSA collective action. (Docket #118.) A total of 12 individuals submitted timely consents to join the collective class. (Docket #2-4, 23, 25, 27, 32, 34-36, 42.) Class notice was sent to 106 individuals and 38 opted out of the lawsuit.

On October 23, 2018, the Court granted PGA's motion for summary judgment on the cash fringe and overtime computation claims. (Docket #132.) The Court subsequently denied the Plaintiffs' motion for reconsideration of its summary judgment ruling. (Docket #141) Following the parties' filing of both a stipulation and a joint motion to dismiss Count III of the operative complaint that was not affected by the Court's summary judgment ruling (Docket #139, #140), the Court entered judgment in favor of PGA on the cash fringe and overtime computation claims. (Docket #142.)

The Plaintiffs timely appealed from the entered judgment on March 7, 2019. (Docket #150) The parties subsequently participated in a mandatory mediation with the Seventh Circuit Court of Appeals. (Ho Dec. ¶ 2.) The parties exchanged approximately five settlement proposals, exchanged additional time and payroll information for class members, and engaged in discussion on how Wisconsin overtime pay should be computed before PGA made a final settlement offer that the Named Plaintiffs decided to accept. (Ho Dec. ¶¶ 3-5.)

Under the final settlement offer the Plaintiffs accepted, PGA agreed to pay to members of the collective action on their FLSA claims the total of $8,532.86, representing 175% of their maximum wage recovery under the FLSA. (Ho Dec. ¶ 5.) PGA agreed to pay to members of the Wisconsin class the total of $5,019.14 for their overtime hours worked on prevailing wage projects,

representing 25% of their maximum recovery on that claim. (Ho Dec. ¶ 6.) PGA also agreed to pay to members of the Wisconsin class the total of $15,320.00 for their overtime hours worked on non-prevailing wage projects, representing about 125% of their maximum recovery if overtime pay should be computed as ½ of the regular rate; and 41.67% of their maximum recovery if overtime pay should be computed as 1.5 times the regular rate. (Ho Dec. ¶ 7.) The settlement permits Class Counsel to petition the Court for class representative incentive awards of $1,400 each to Sinclair, Krohn, and Schilling, to be paid out of the class recovery. (Ex. A, ¶ 5(a)(i).) PGA also pays to Class Counsel attorney's fees in an amount not to exceed $25,000. (Ho Dec. ¶ 8.) The proposed settlement thus provides a total recovery of $28,872.00 for the class, and maximum attorneys' fees of $25,000.00.

## **LEGAL ANALYSIS**

1. **The Court Should Grant Preliminary Approval Of the Settlement Because It Is Fair, Reasonable, and Adequate.**

There is no need for the Court to again take up the questions of class certification when it has already granted the parties' stipulation for FLSA conditional certification (docket #24), denied PGA's motion to decertify the conditionally certified FLSA collective action (docket #118), and granted the Plaintiffs' motion to certify a Rule 23 class on the overtime computation claims (Docket #118).

    a.    <u>The FLSA Settlement Should be Approved</u>.

FLSA claims cannot be settled in the absence of court or Department of Labor approval. *See Walton v. United Consumers Club, Inc.*, 286 F.2d 303, 306 (7th Cir. 1986) ("[T]he Fair Labor Standards Act is designed to prevent consenting adults from transacting about minimum wages and overtime pay. Once the Act makes it impossible to agree on the amount of pay, it is necessary to ban private settlements of disputes about pay. Otherwise the parties' ability to settle disputes

would allow them to establish sub-minimum wages."). Before approving an FLSA settlement, the court must ensure that the settlement's terms and conditions (1) represent "a fair and reasonable resolution of a bona fide dispute over FLSA provisions" and (2) reflect "a compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores, Inc. v. U.S. Dept. of Labor*, 679 F.2d 1350, 1354-55 (11th Cir. 1982).

The FLSA class will recover 175% of the wages they allegedly lost because PGA computed their prevailing wage overtime pay as 1.5 times the wage rate plus 1 time the cash fringe payment, as opposed to 1.5 times both the wage rate and the cash fringe payment. The maximum recovery for the class is 100% liquidated damages and therefore 200% of the unpaid wages. 29 U.S.C. §216(b). For the class to receive 175% rather than 200% of wages allegedly lost in a settlement is reasonable given two considerations: First, the District Court ruled that PGA complied with the FLSA in its computation of overtime pay, so the Plaintiffs faced some risk that the Court of Appeals would agree with the District Court. Second, even if the Court of Appeals did reverse the District Court, on remand PGA would have argued that it satisfied 29 U.S.C. §260 given its reliance on the DWD's advice on how prevailing wage overtime pay should be computed. The Court could then exercise its discretion to either award no liquidated damages, or to award liquidated damages of a smaller amount. The proposed FLSA settlement is clearly reasonable given these risks for the class to recover less by going through the appeal.

    b.    <u>The Wisconsin Settlement Should be Approved</u>.

The settlement of a class action requires court approval pursuant to Fed. R. Civ. P. 23(e). To approve a settlement, the court must determine that it is "fair, adequate and reasonable, and not a product of collusion." *Great Neck Capital Appreciation Inv. Partnership, L.P. v.*

*PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002). In making this determination, the court must bear in mind that the settlement of class action litigation is favored. *Id.* The court should not substitute its own judgment regarding optimal settlement terms for the judgment of the litigants and their counsel. *Id.* In order to determine whether a settlement is fair, adequate, and reasonable, courts consider factors including: (i) the strength of the plaintiffs' case balanced against the settlement offer; (ii) the defendants' ability to pay; (iii) the burdens of further litigation; (iv) the amount of opposition to the settlement; (v) the presence of collusion; (vi) the opinion of competent counsel; and (vii) the stage of the proceedings and the amount of discovery that has been completed. *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). The first factor is the most important. *Id.*

On appeal, the Plaintiffs drew a distinction between overtime hours worked on prevailing wage projects and overtime hours worked on non-prevailing wage projects. Plaintiffs agree that Wisconsin's prevailing wage statutes controlled as to whether cash fringe payments must be included when computing overtime pay on prevailing wage hours worked. For non-prevailing wage overtime hours, Plaintiffs would argue that under DWD §274.03 overtime pay must be computed using the employee's regular rate, that Wisconsin adopted the FLSA's exclusions from the regular rate, and that cash fringe payments cannot be excluded from the regular rate computation under Wisconsin law because it cannot be excluded from the regular rate under the FLSA.

The parties reasonably settled the non-prevailing wage overtime claim for a total payment of $15,320 to the class. The District Court ruled that PGA was permitted to use the type of work method rather than the regular rate method to compute overtime pay under Wisconsin law. Had the Court of Appeals agreed with the District Court and affirmed its ruling, the class would not

have recovered any non-prevailing wage overtime pay. Even if the Court of Appeals disagreed with the District Court, it could have ruled that the FLSA did not provide a good analogy with Wisconsin law, so that class members' damages would be substantially reduced because cash fringe payments need not be counted when computing the regular rate.

Even if the Court of Appeals overturned the District Court and found that overtime pay under Wisconsin law must be computed using the regular rate including the cash fringe payments, the parties disagree as to how overtime pay should be computed. Take the example of an employee who received $20 per hour for 40 hours of straight time, and 1.5 times $10 per hour for 10 hours of overtime for a total of $950, so that his average straight time wage rate for the week was $18 per hour. Assuming the Plaintiffs prevailed on liability, PGA would have argued the employee is entitled to $18 for the first 40 hours worked and 1.5 times $18 for each of 10 overtime hours worked, for a total of $990. The Plaintiffs would argue the employee must receive the full $20 per hour for each of his straight time hours worked under Wisconsin law, so that he is entitled to $20 times 40 hours and 1.5 times $18 for each of 10 overtime hours worked, for a total of $1,070. In each instance computing damages using the Plaintiffs' method would produce a result that is exactly three times the result using PGA's method.

Wisconsin courts have not directly addressed the disputed issues of: (1) how overtime pay should be computed under Wisconsin law for workweeks during which the employee received more than one hourly wage rate, (2) whether §207(e) of the FLSA should be read into DWD §274.03, and (3) whether Wisconsin law permits using the employee's regular rate, as opposed to straight time wages, when computing overtime pay. The settlement payment represents approximately 1.25 times PGA's maximum liability if the Plaintiffs' liability theory and PGA's damage calculation method is accepted; and about 41.67% of PGA's maximum liability if the

Plaintiffs' liability theory and damage calculation method are both accepted. This amount represents a reasonable compromise of vigorously disputed claims.

Similarly, paying Wisconsin prevailing wage overtime pay as 25% of PGA's maximum exposure is a reasonable compromise of vigorously disputed claims. Plaintiffs faced the risk that the Seventh Circuit would give due weight deference to the DWD's interpretation that the cash fringe payments need not be included when computing overtime pay pursuant to *Tetra Tech Inc. v. Wisconsin Department of Revenue*, 2018 WI 75, ¶79, 382 Wis. 2d 496. No Court has addressed the issue of whether cash fringe payments constitute a benefit for which an employer makes irrevocable contributions to a fund, plan, program, or trust; so the Plaintiffs faced risk that the Court of Appeals would conclude the cash fringe payment is more analogous to a fringe benefit contribution than to a payment of wages, and therefore an employer need not pay overtime premium pay on the cash fringe payments.

Other factors similarly support granting preliminary approval to the parties' settlement agreement. The settlement comes after the completion of all district court proceedings in the case, including a full opportunity by both parties to conduct written discovery and depositions. Further litigation including, the appeal pending before the Seventh Circuit and, if required, litigating the issues of liability, damage calculations, and the appropriateness of awarding liquidated damages would be extremely burdensome on both parties. This settlement is the product of arms-length negotiations initiated by and overseen by the Seventh Circuit's Mediation Office, rather that the product of collusion. Finally, the opinion of Class Counsel is in favor of approving the settlement, as discussed in this joint brief in support of preliminary settlement approval.

Both the proposed attorneys' fee award and class representative incentive award should also receive preliminary Court approval as within the range of reasonableness. A fee award of a

maximum of $25,000 is substantially below the Lodestar when taking into account the approximately two hundred hours that Class Counsel has spent litigating this case, not counting time spent litigating the prevailing wage claim for Schilling and Krohn that is not included in this settlement. (Ho Dec. ¶9) Awarding to Class Counsel about 45% of the total recovery is also within the range of 33% to 50% that is customary in contingency fee agreements. *In re Cont'l Ill. Sec. Litig.*, 962 F. 2d 566, 572 (7th Cir. 1992). Class representative incentive awards of $1,400 each to the three class representatives is reasonable, as the awards are modest in amount, while but for the class representatives' participation and persistence through more than three years of litigation no class recovery would have been possible.

### 2. The Court Should Approve the Proposed Notice for the Class.

The parties also request that the Court approve the proposed Class Notice. Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). A settlement notice need only be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re BankAmerica Corp. Sec. Litigation*, 210 F.R.D 694, 707 (E.D. Mo. 2002). The notice must "clearly and concisely state in plain, easily understood language[:]" (1) the nature of the action, (2) the definition of the class certified, (3) the class claims, issues, or defenses, (4) that a class member may enter an appearance through an attorney if the member so desires; (5) the time and manner for requesting exclusion; and (6) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

Here, the notice that the parties have prepared explains in clear and easy to understand language the options that are available to class members, and how their rights may be affected by

selecting each of those options. The proposed notice features bold headings and well-defined sections to aid in understanding and satisfies each of the Rule's substantive requirements. See sections 2, 1, 7, 10, and Your Legal Rights Section. The Class Notice should be approved.

## **CONCLUSION**

The proposed settlement represents a good faith resolution of disputed claims and appropriately balances the risks of future litigation against the benefits of a certain and final resolution. The terms of the proposed settlement are fair, adequate, and reasonable, and they will provide substantial benefits to participating class members. For these reasons, the parties respectfully request that the Court grant this motion and issue an order granting preliminary approval to the proposed settlement.

Respectfully submitted this 18th day of September, 2019.

s/Yingtao Ho
Yingtao Ho
THE PREVIANT LAW FIRM, S.C.
Attorney for Plaintiffs
310 W. Wisconsin Ave. Suite 100MW
Milwaukee, WI 53212
414-271-4500 (Telephone)
414-271-6308 (Fax)
Email: yh@previant.com

/s/Robert Driscoll
Robert S. Driscoll (SBN 1071461)
REINHART BOERNER VAN DEUREN S.C.
Attorneys for Defendant
22 East Mifflin Street, Suite 600
P.O. Box 2018
Madison, WI 53701-2018
608-229-2200 (Telephone)
608-229-2200 (Fax)
Email: rdriscoll@reinhartlaw.com